ARCHIBALD S. GREEN, Respondent, *v.* ABIJAH C. DISBROW, Appellant.

(GENERAL TERM, THIRD DEPARTMENT, NOVEMBER, 1872.)

The plaintiff proved a book account charged against A., but the credit was intended to be given to B., and the charge so made at his request and for his convenience. *Held*, that the undertaking of B. was not collateral, but the credit was wholly to him.

A. lived on B.'s farm, which was carried on for B.'s benefit and under his control. No specified compensation was paid to A. for services performed and hands boarded by him. A. at different times delivered butter and eggs to the plaintiff, at B.'s suggestion that they should be so delivered to apply on the account; and the value of the articles was so applied. B. saw the account and did not object, and afterward promised to pay it. The butter was from milk of cows, and the eggs were from fowls owned by A. and B. together, but kept on the farm, and used in common.

*Held*, that the articles were delivered for the account of B.

*Held*, also, that the articles were not to be regarded as having been delivered in part payment of the account, but as items of a mutual, open and current account, where there have been reciprocal demands.

Books of original entry, and also books of entries transcribed from lost books of original entry, are admissible in evidence as memoranda of witnesses who testify to delivery of the items of the account.

A bill of items, proved to have been copied from the entries, is admissible, at least, to show what charges were actually made.

Charges in books and accounts, proved by the plaintiff and his clerks, are competent, although other items in the same account are not proved.

*Held*, also, in an action on the account against B., that the plaintiff might prove that A. had no property, as bearing upon the improbability that plaintiff would give him credit for any large amount.

The contents of a letter from plaintiff to A., applying for payment of the account, which appeared from A.'s cross-examination to have been received, and as to which he then swore he did not know where it was, but thought it had been destroyed,—*Held*, admissible on re-direct examination.

*Held*, also, that testimony to show that B. had paid A.'s similar debts was proper on the question of A.'s agency in contracting the account.

And that plaintiff's custom as to charging interest, communicated to B., and on which he had acted, was also admissible.

But *held*, also—the demand being almost outlawed and disputed, the circumstances peculiar, and the evidence failing to fix the time when the custom was communicated to B., or in what manner he had conformed to the custom, or how the account was made up, with regard to charges for interest—that interest, before the suit, was improperly allowed.

Green *v*. Disbrow.

THE action was brought to recover the amount of an account for goods alleged to have been sold by the plaintiff to the defendant. The plaintiff was a merchant, and the account accrued between November, 1855, and November, 1863. The account was charged directly to the defendant's son, as was claimed, by the special direction of the defendant, and by reason of his promise to pay for the goods furnished. The defendant claimed that he was not liable, because the goods were delivered to his son, and the credit given to him and not to the defendant, and that the claim was barred by the statute of limitations. The cause was referred. The testimony was conflicting as to the material facts, and the referee reported in favor of the plaintiff for the amount of the demand. The report was as follows, viz. :

"That between the 6th day of November, 1855, and the 12th day of November, 1863, and at the times set forth in the bill of particulars herein, the plaintiff delivered to one Jonathan W. Disbrow, goods, wares and merchandise of the amount and value set forth in said bill of particulars ; that the same were sold and delivered at the special instance and request of the defendant, and upon his sole credit, and upon his express promise to pay therefor ; that said goods, wares and merchandise were sold on credit, and were charged in account upon the plaintiff's books ; that they were charged in said account to said Jonathan W. Disbrow, at the special instance and request of the defendant ; that during the same time and at the times set forth in said bill of particulars, the said Jonathan W. Disbrow, at the request of the defendant, delivered to the plaintiff sundry quantities of butter and eggs to be applied on said account, and the same were thereupon credited on said account by the plaintiff ; that it was the custom of the plaintiff to charge interest on such accounts after six months from the time of the sale and delivery of the several articles therein charged, which custom was known to the defendant.

That the last item charged on said account was delivered and charged, as aforesaid, on the 11th day of November,

1863, and the last item delivered and credited thereon was delivered and credited, as aforesaid, on the 20th day of August, 1862, and that this action was commenced on the 23d day of June, 1869.

And as conclusions of law I find that said items so charged and credited constitute an open, current and mutual account and reciprocal demands between the plaintiff and defendant.

That no part of the plaintiff's demand is barred by the statute of limitations.

That the plaintiff is entitled to interest upon each item of said account after six months from the delivery thereof, after deducting from the amount of said account the value of said butter and eggs, and other things credited thereon.

That the balance due from the defendant to the plaintiff upon said account, on the 11th day of November, 1863, was $979.12; which sum, together with interest thereon from that date, less the interest for six months on thirty-seven dollars and forty-five cents, and amounting in all, to this date, to the sum of $1,521.46, the plaintiff is entitled to recover of the defendant herein, besides costs."

He also made additional findings as follows, viz.:

1. That the first item in the account upon which this action was brought was for goods delivered to Jonathan W. Disbrow on the 6th day of November, 1855.

2. That the only promise or request proved to have been made by defendant was sworn by plaintiff to have been made, and was made, before the 6th day of November, 1855, and was, in substance, as follows: Defendant requested plaintiff to keep Jonathan's account separate for convenience, so that they wouldn't have to go all over the books and examine the items; that he expected to settle the account the same as though charged directly to him. But, in addition to this express declaration, I find the following facts, viz.:

*First.* That, before the opening of the account in suit, Jonathan Disbrow had frequently procured goods at the plaintiff's store on his father's credit, which were charged to the defendant and paid for by him without any notice forbid

ding him, the plaintiff, from allowing Jonathan to obtain other goods.

*Second.* That the defendant frequently saw the plaintiff's account for the goods in question, from November, 1855, to November, 1863, in this suit, and made no objection thereto.

*Third.* That on the 12th of January, 1858, when the defendant settled with the plaintiff for the goods which had been charged to the defendant in his own name, he paid to the plaintiff, upon the account in this suit, fifty dollars cash.

*Fourth.* That, when the amount in suit had run up to about $800, the plaintiff had a conversation with defendant concerning the account, when, at the close thereof, the defendant said, in substance: "Well, well, what they have at one time they cannot have at another."

*Fifth.* That the articles charged in the account in suit were had by Jonathan Disbrow, and used upon the farm of the defendant, which was managed upon the following terms: On the marriage of Jonathan, his father told him to go into the house on the farm, and he did so, and kept house there, having no charge or control, but working on the farm, which was conducted for his father's benefit, and his father had the proceeds thereof. There was no agreement as to Jonathan's compensation. He boarded the men who worked on the farm for his father without charge. When his father had groceries on hand in his own house, such as sugar, tea and coffee, Jonathan received them from his father without being weighed, measured or charged, and used them upon the farm; and at other times Jonathan and his family obtained groceries from the plaintiff's store.

On some occasions, Jonathan's wife consulted with the defendant's wife, in the defendant's presence and hearing, as to obtaining goods for dresses, and received express permission; and on other occasions defendant told Jonathan to send to the plaintiff's for articles that were wanted during the harvesting season.

3. That, after such request, plaintiff never applied to

defendant, for payment of the account charged to Jonathan, until after the date of the last item on said account.

4. That, when plaintiff did so apply to defendant for payment, defendant refused to pay said amount, and said, in substance: " Good God! you do not expect me to pay that account; it would ruin me. I told you long ago that I did not expect to pay."

5. That, while said account was running, plaintiff also had a separate account charged to defendant individually, which was in no way connected with the account in question, and which was paid in full before the commencement of this action.

6. That no written promise or agreement was made or subscribed by defendant to pay the account mentioned in said report, or any part thereof.

7. That the butter and eggs, referred to in referee's report as delivered to plaintiff by Jonathan W. Disbrow, were produced from cows and hens which were kept upon the farm, some belonging to Jonathan and some to the defendant, but they were not separately kept, but were used as required both in the family of defendant and that of Jonathan.

8. That no charge or claim was ever made, either by defendant or said Jonathan W. Disbrow, against the plaintiff for said butter and eggs, or any portion thereof, except that after they had been delivered to the plaintiff, and were credited in the account upon his books, the defendant saw the amount of the credits, and what they were for, upon the books and made no objection.

9. That the only request proved to have been made by defendant, relative to the delivering to plaintiff of said butter and eggs, was a statement to his son Jonathan's wife to keep all the eggs and butter they wanted, and if they had more, send them to Green's as well as anywhere, as it made no difference to him where they went; and one night the defendant's wife said to her in defendant's presence, when informed that they had more eggs and butter than they wanted to use, that they had better take them to Archie's and let them be applied on the account.

10. That no payment was made on said account within six years next before the commencement of the action. But there was no agreement between the parties, that the butter and eggs should be received as a payment on account, nor any other agreement relating to them, except an implied agreement that they should be sold and delivered at their market value, and they were credited in account at such value.

11. That there was no proof of any written acknowledgment of indebtedness or promise by defendant to pay said account, or any part thereof, within six years before the commencement of this action.

12. That of said account all the items accrued before June 23d, 1863, except items amounting in all to the sum of ($104.29) one hundred and four dollars and twenty-nine cents. It had always been the uniform custom of the plaintiff to charge interest on all his accounts, except cash charges, such as flour, after six months, and this custom was known to the defendant when the account was contracted. That Jonathan had no property, and the sole credit for the account in question was given by the plaintiff to the defendant, and the account was kept in the name of Jonathan at the request of the defendant, and for his convenience.

Exceptions were duly taken to the referee's report.

The plaintiff's accounts were kept in this manner: The original entries were made in a blotter, then transcribed to a day-book and posted into a ledger, which gave the page and amount of the entry on the day-book, except that sometimes in giving a credit it was entered at once upon the ledger. The plaintiff produced on the trial all the books of original entries of the account, except one or two of the earliest, which were lost or destroyed. He produced the day-books containing transcripts of all the entries in the lost blotters and all the ledgers. All the entries in the lost blotters were made either by the plaintiff or his clerk. The transfers from the lost blotters to the day-books were made by the plaintiff. On an exhibit, being bill of items, the plaintiff (having looked over all the entries of defendant's account in his books) had

Green v. Disbrow.

entered certain marks on the margin, showing which were transferred by himself, which by his clerk, which were sold by and entered by him in the blotters, and so of the other clerks. Each clerk who had been in plaintiff's service, and also the plaintiff, testified that all the entries made on the blotters of this account were made from day to day in the usual course of business, and were believed to be correct, and were so intended.

The referee admitted the original entries in the blotters, and also so much of the transcripts as were made from the lost blotters; also the exhibit marked in the margin as above stated.

Questions were made upon the trial as to the admissibility of evidence, and exceptions taken, which are stated in the opinion.

A motion also was made for a nonsuit and denied, to which decision exceptions were also taken.

Judgment was entered for the amount paid, by the referee, and costs, and the defendant appealed.

*Matthew Hale*, for the defendant and appellant.

*L. Tremain*, for the plaintiff and respondent.

Present—MILLER, P. J., POTTER and PARKER, JJ.

By the Court—MILLER, P. J. It is insisted by the defendant's counsel that the evidence introduced upon the trial of this action does not warrant the conclusion, at which the referee arrived, that the goods delivered to Jonathan W. Disbrow, the defendant's son, were delivered at the special instance and request of the defendant, and upon his sole credit and his express promise to pay for the same.

There was evidence upon the trial to prove that the defendant originally, in 1851, told his son to go to the plaintiff's store and procure what articles he required, and when he settled his own bill the defendant would settle that. This

Green v. Disbrow.

was communicated to the plaintiff, the articles charged in the account to the defendant, marked for the son; and defendant, in 1852, requested the plaintiff to keep the account separate for convenience, so that he would not be obliged to go all over the books and examine the items, stating that he expected to settle the account the same as if they were charged directly to him. The charges were then made to the son, and the defendant settled accounts, kept in that way, twice, once on the 4th of April, 1853, and again on the 31st of October, 1855; and on the 12th of January, 1858, there is evidence to show that the defendant made a payment of fifty dollars upon the account in question. He saw the books containing the account against his son frequently between November, 1855, and 1863, and when the account run up to $800 the defendant looked it over, said it was large, and that what they, referring to his son and family, had at one time they could not have at another.

During the whole period, while the account was accruing, the son lived on his father's farm, which was carried on for the benefit and under the control of the defendant. There was also testimony that for fourteen years, while the son worked the farm, he received no specified amount for his services. He boarded the hands without charge. The wages of the hired girl were paid by his father, who furnished groceries of his own without their being measured or weighed, directed others to be purchased of plaintiff, and the proceeds of the farm were turned over to the defendant. There is also evidence of the declarations of the defendant recognizing the claim of the plaintiff. True, the testimony is conflicting on most of the material facts, and it is a strong circumstance against the validity of the plaintiff's claim against the defendant that it was charged upon the books to the son, and was allowed to remain until nearly barred by the statute of limitations before any suit was brought. These were matters, however, for the consideration of the referee; and as it is not entirely apparent that his conclusion is entirely adverse to the

Green *v.* Disbrow.

weight of the evidence, it should not, be disturbed in this respect, unless some legal rule has been violated.

I am inclined to think that this has not been done, and that there was sufficient evidence to warrant the finding that there was not only a request by the defendant to the plaintiff to deliver the goods, but a promise to pay, kept alive and continued by acts and declarations, as well as by circumstances, showing that the son was merely a servant of the defendant, and that the goods were really furnished for the benefit of the latter.

Although the fact that the goods were charged directly to the son upon the plaintiff's books, unexplained, establishes that the *sole credit* was not given to the defendant, the accompanying explanation that this was done at the defendant's request, as a matter of convenience, and to distinguish the account from the articles delivered to the defendant personally, rebuts any presumption arising from the manner in which the charges were made.

The whole credit, therefore, according to the finding of the referee, which is, I think, warranted by the facts, was given to the defendant and not to his son, and the promise made was direct and not collateral to any liability of the son. In fact, it would be clearly erroneous to allow a party who had induced a merchant to keep an account in the name of another, in order to distinguish it as a separate matter, to claim, in the face of proof showing that such was the case, that the undertaking to pay was collateral. It is always competent to explain acts of this character, and, when satisfactorily done, there is no reason why they should bear a different interpretation from what is authorized by the evidence.

It is further claimed that all of the items of the account which accrued prior to June 23, 1863, are barred by the statute of limitations.

This depends upon the fact whether there was an open current and mutual account and reciprocal demands between the parties. There are credits on several occasions in 1858,

1860, 1861 and 1862, for butter and eggs delivered by defendant's son to the plaintiff, amounting in all to between twelve and thirteen dollars; the last credits in 1862, on the tenth and thirteenth of June and the twentieth of August amounting to two dollars and fifty-nine cents.

In regard to these credits the wife of the defendant's son testifies to a conversation in which the defendant stated that if they had more eggs and butter than they wanted that they should send them to the plaintiff and let him apply them upon the account.

There is evidence to show that the defendant saw the credits on the books, and asked what they were, and, upon being told, made no objection, thus indirectly assenting to what had been done. Afterward, as we have seen, if the testimony is to be believed on that point, he promised to pay the account.

There is evidence to show that one of the cows was given to the wife of the defendant's son by her father, and the other the father pointed out and told the son he could have; that the defendant bought about a dozen fowls and put them on the farm, and the rest were furnished by the son, there being generally thirty or forty there. The son sold some twenty-six of the fowls at one time. Jonathan's wife testifies that the fowls belonged to the farm and to the defendant. The exact time is not stated when the arrangement was made as to these different articles of property, and it may be assumed, I think, that it was at or about the time when the son took possession of the farm in 1851. The manner in which the business of the farm was conducted by the son, as the agent of and for the benefit of the defendant, without recognizing the right of any one but the defendant, as the owner of any portion of the property, as well as the assent of the defendant to these credits upon the books, all tend to establish that the articles were considered and delivered as the property and with the assent and approbation of the defendant.

Nor do I think the delivery of these articles, under the cir-

Green v. Disbrow.

cumstances, can be considered as a payment upon the account. They constituted a delivery of goods in the usual and customary manner, where two parties have mutual dealings, and a current account exists between them.   If it were otherwise, then every delivery of goods would constitute a payment, and mutual accounts could scarcely be proved and established under any circumstances.   One item of credit alone is held to make the account mutual, and take the case out of the statute. (*Penniman* v. *Rotch*, 3 Metc., 216; see also *Kimball* v. *Brown*, 7 Wend, 322; *Norton* v. *Laus*, 30 Cal. 126; Code, § 95.)   The authorities relied upon by the defendant do not, I think, sustain the position contended for or controvert the views expressed.

The bill of items of the accounts was competent as a copy of memoranda showing what charges were actually made, if for no other purpose.   The case does not show that it was admitted as evidence absolutely, although perhaps it is fair to assume that it was.   The books of account, the admission of which was restricted and confined to original entries in the blotters, and so much of the entries in the day-books as were transcribed from the lost blotters, were also competent as memoranda of entries made by the witnesses who testified to the delivery of these items of the account.   Witnesses have a right to examine entries made by them, for the purpose of refreshing their recollection, and to read the same from the books. (*Gilbert* v. *Sage*, 5 Lansing, 290; *Marclay* v. *Shults*, 29 N. Y., 351; *Philbin* v. *Patrick*, 6 Abb. [N. S.], 284.) Most of the charges were proved by the plaintiff and his clerks, and although the plaintiff testifies that perhaps one or two others of his clerks may have made some entries, whose names are not remembered, and who stayed but a short time, this may detract from the weight of the testimony, but does not exclude entirely from consideration such portion of the entries as is sustained by competent proof.

The evidence as to defendant's son having no property was competent, as showing the improbability of the plaintiff's trusting him for so large an amount.   It is but a circum-

stance trivial of itself, but bearing somewhat upon the question involved. The contents of the letter to defendant's son was also admissible; and the loss of the letter was, I think, sufficiently proved to authorize the admission of secondary evidence.

The testimony showing that, upon other occasions, the defendant had paid similar debts, contracted by his son, was proper upon the question of agency, and of the son's authority to contract debts for his father. Several acts of this kind may tend to establish that such authority existed; and, although the question is a close one, I am inclined to think that there was no error in the admission of the evidence.

The motion for a nonsuit was properly denied.

The testimony as to plaintiff's custom in charging interest was, I think, properly admitted. (*Reab* v. *McAllister*, 8 Wend., 109; S. C., 4 Wend., 483; *Esterly* v. *Cole*, 3 Comst., 502; S. C., 1 Barb:, 235.) But the referee erred in allowing such interest, because the proof does not establish the time when the plaintiff communicated to the defendant that such was his custom. The evidence of the defendant's knowledge is very slight. The plaintiff swears that he told defendant that his custom was to charge interest after six months; and he charged him interest on his account, and he paid it. When the plaintiff told him, and when he paid the account, is not stated. If this was after the whole account in question accrued it could be of no avail. If before, it should have been so proved. Nor does it appear how the interest in the account paid was charged. Here, there appears to be a charge of interest every six months; but it is not exactly clear how those various items are made up, or whether interest is not charged upon the interest. In a case similar to the present one, where the plaintiff has delayed bringing a suit until the statute of limitations has nearly run, and where the defendant had denied his liability and repudiated the account, under the circumstances presented, the proof should have been more clear, explicit and satisfactory; and I think

the referee erred in allowing interest before the action was brought. The plaintiff was not entitled to interest, as the case stood, until the demand was liquidated; and the demand only bore interest from the time the suit was commenced, which was on the 23d of June, 1869.

The amount of interest charged in the account, being $155,50, should be deducted from the whole amount, $993.12, leaving a balance of $837.62, for which, with interest from June 23, 1869, the plaintiff is entitled to judgment.

The judgment must therefore be reversed and a new trial granted, with costs to abide the event, unless the plaintiff consents to reduce the amount of the damages to $837.62, with interest to the date of the report from June 23, 1869, in which case the judgment should be affirmed for the last mentioned sum and interest, without costs of appeal to either party.