SYLVESTER VIETS, RESPONDENT, v. THE UNION NATIONAL BANK OF TROY, APPELLANT.

*Bank— action by a depositor against it upon its refusal to pay his check — when the demand made by the payee will not set the statute of limitations running in favor of the bank as against the drawer of the check.*

Where a check, drawn by a depositor upon a bank in which he has deposited money, has been indorsed by the payee, and presented for payment by the indorsee and payment thereof refused, the demand so made will not, in the absence of all proof to show that the indorsee was acting as the agent of the drawer of the check, constitute such a demand as will set the statute of limitations running in favor of the bank as against the depositor. (POTTER, J., dissenting.)

APPEAL from a judgment in favor of the plaintiff, entered upon the trial of this action by the court without a jury.

The action was brought to recover an unpaid balance of moneys deposited by the plaintiff with the defendant on February 19, 1869. The money so deposited belonged to a Mr. John Banker, and it had been paid by the bank to his committee in pursuance of an order made by a county judge and upon a bond of indemnity required by and given to the bank. Two checks drawn upon the bank by the plaintiff on February nineteenth to the order of Mr. Banker were indorsed by the latter to one Ellen M. Houghtaling, who subsequently became his wife. The checks were presented for payment, but payment thereof was refused.

*James Lansing*, for the appellant.

*R. A. Parmenter*, for the respondent.

LEARNED, P. J.:

The plaintiff was a depositor in the defendants' bank. The defendants have never paid to him, or to anyone authorized by him to receive the money, the amount of the deposit. In the year 1878 the plaintiff made a demand of the money, which was refused, and he brought this action thereafter in the same year to recover the amount.

It is claimed that the action is barred for this reason: On February 19, 1869, the plaintiff gave John Banker two checks, amounting in the aggregate to $4,867. On the 21st or 22d of February, 1869, John Banker indorsed these checks to Ellen M. Houghtaling. On the 6th of March, 1869, one of these checks was presented and payment refused. It does not appear for whom it was presented. On the 28th of August, 1871, the other was presented and payment refused. John Banker did not present either of them. It does not appear by direct proof that they were protested and notice given to plaintiff. But it does appear that Ellen M. Banker (formerly Houghtaling), after the said presentations of the checks, recovered a judgment on each of them against the plaintiff, and in those judgment-rolls due notice of presentment is averred.

Without going over the evidence as to the so-called injunction order, and the unauthorized payment made by the defendant upon a bond of indemnity, it seems to me that the question of the statute of limitations is the only one necessary to consider. That question is this: When it appears that a depositor in a bank has drawn his check thereon to a payee, and that such check has been indorsed and presented, and payment refused, do those facts, without any other proof, constitute such a demand that the statute of limitations begins to run in favor of the bank and against the depositor.

The bank is bound to pay to the depositor. It is not bound to pay to anyone else. Therefore the holder of a check cannot sue the bank. The bank may voluntarily pay the payee named in the check, or an indorsee, and such payment will, to that extent, relieve it from liability to the depositor.

The check does not transfer a part of the funds to the payee;

otherwise he could sue. The payee may sometimes be, but is not necessarily, the agent of the drawer. If not the agent of the drawer, then the payee, in presenting the check, does not make a demand for the depositor. And no one but the depositor has a right to make a demand of payment.

And just here it seems to me that the distinction lies. A demand of payment must be made by the person to whom payment is to be made. I do not mean that such person may not employ an agent to make the demand. For on the familiar principle, that what one does by an agent he does himself, such a demand would be the depositor's demand. But the payee of a check is not necessarily, and is not ordinarily, the agent of the drawer. Still less is the indorsee of the payee. So that when the indorsee, or even when the payee, presents a check, he does not make a demand of payment for the depositor.

The defendant cites, as showing the contrary, *Oddie* v. *National City Bank* (45 N. Y., 735). But an examination of that case will show that it in no way involves the question here presented, viz., whether a refusal to pay a check makes the statute of limitations begin to run between the depositor and the bank.

The depositor should not be affected by a refusal, of which he has not, at the time, knowledge, either personally or through an agent. But the drawer has not necessarily notice of the presenting of a check by the payee at the time when the presentment is made. If it be argued that the check will be protested, and he will receive notice of payment, then does the statute of limitations begin to run from the day on which he receives notice, or from the day of presentment? If the former, then the drawer's receipt of notice is construed to be a demand of payment; if the latter, then he is affected by a demand of payment of which he is ignorant.

It seems to me that the principle so often settled, that the payee of a check has no right of action against the bank for a refusal to pay, concludes this question.

The defendants have the money of the plaintiff on deposit. It must be held, on the proof, that they have not paid it to him, or to anyone whom he authorized to receive it. The statute ought not to run until the plaintiff has made his own demand (personally or through his agent) and has been refused. To hold that from the

day that a check is presented, even by some endorsee of a payee, and payment refused, the statute begins to run in favor of the bank and against the drawer seem to me to be erroneous.

Still another consideration.  Suppose a depositor draws a check for a part of the deposit and that check is presented by the indorsee of the payee and payment refused.  Now if the depositor can thereupon at once sue the bank; for how much can he sue? The amount of the check ?  Then he can divide up his claim and subject the bank to several actions for one deposit.  The total deposit ?  *That* has never been demanded.

I think the judgment should be affirmed, with costs.

BORDMAN, J., concurred.

POTTER, J. (dissenting):

This is an appeal from a judgment in favor of the plaintiff rendered upon the trial of the action before the court.  The action was to recover an alleged balance or excess of moneys deposited by plaintiff with defendant's bank, over moneys withdrawn running through a period of years.

Although this is the form and character of the complaint the contention relates entirely to one deposit of $4,867.83, made February 19, 1869, and checks drawn by plaintiff in respect to that deposit, and the transactions of the parties in relation to that sum.  Besides that sum the plaintiff had made no deposit in the defendant's bank since September, 1868, and had remaining due him from the defendant for balance of deposits and interest, but the sum of twenty-three dollars and fifteen cents, at the close of the year 1868. The evidence had reference to this deposit of $4,867.83.  The answer contained, among other defenses, that this sum of money so deposited by plaintiff, belonged to John Banker, and the same had been paid to his committee under the order of the court and the further answer of the statute of limitations.

There was a good deal of evidence introduced upon the trial in relation to proceedings taken to have said Banker declared of unsound mind, and the appointment of a committee of his estate and the acts of such committee.  But in the view taken of the case ultimately and the ground upon which the case was decided

by the court below, and in the view, I think, the case should be regarded upon the appeal, it will not become necessary to consider the evidence of that character. If the money in the bank had belonged to John Banker, and the defendant could regard him and not the depositor as the owner, yet it had disregarded the wishes of John Banker in respect of it and had in fact paid it out ignoring both John Banker and the plaintiff, and has but the order of the court for the payment in a proceeding in which the plaintiff, towards whom the defendant assumed relations, was not a party.

There is no question that the sum deposited by the plaintiff in the defendant's bank, in his own name, was the money of John Banker. The plaintiff on the day after depositing the money, gave the said Banker two checks each dated February 19, 1869, one for $1,367 and the other for $3,500, representing the amount of the deposit. These checks were received by the said Banker for the sum he let the plaintiff have to deposit, and so far as the plaintiff and Banker are concerned, the checks were received by the said Banker as a full acceptance and satisfaction of all relations between the plaintiff and the said Banker, and if the checks had been paid either to Banker or his order, he would have the money he had parted with to plaintiff.

The money was deposited by plaintiff with the defendant's bank and the legal relation between plaintiff and defendant by reason of the deposit, was that of debtor and creditor in respect to the amount of money deposited. This relation was purely and simply a legal one between the depositor and the depositary. It had no character of trust or element of equity in favor of anyone so far as the bank was concerned, which stood in respect to the deposit as the simple debtor of the plaintiff. That is the ordinary legal effect of making a deposit. If it had any other character or quality, that quality existed between the plaintiff and Banker, the owner of the money; and as before stated, whatever there was of that nature was between the plaintiff and Banker, and that was fully answered and satisfied by the giving and accepting the checks for the amount of the deposit, and Banker has never been heard to complain in that direction.

The relation between the plaintiff and defendant was only that

of debtor and creditor, with the right of the depositor to demand and the duty of the depositary to make payment at just such times within the hours of business, and in just such sums as it might suit the pleasure or convenience of the plaintiff as depositor. These rights and obligations characterize all ordinary deposits of money in banks. (*Ætna Nat. Bank* v. *Fourth Nat. Bank,* 46 N. Y., 82.) In this case these relations are alleged in the complaint and not denied in the answer. The plaintiff may exercise his right to demand payment in person or by check, or in any other manner consistent with the ordinary modes for the transactions; and in whatever manner he chooses to make the demand, within those limits, it is the duty of the depositary to comply with the demand by making payment to the depositor, or to the person appointed by him to receive payment. (*Downes* v. *Phœnix Bank,* 6 Hill, 297 ; *Bank of British N. Am.* v. *Merchants' Nat. Bank,* 91 N. Y., 111.)

The evidence in the case shows, and the findings of the court below are, that these two checks, given by the plaintiff to the said John Banker, and by him indorsed and transferred to Miss Houghtaling, afterwards Banker's wife, were duly presented to the bank and payment demanded and refused prior to September, 1869.. Upon the refusal of payment of these checks the plaintiff, the depositor, had a cause of action against his depositary, the defendant. The defendant, by its refusal to pay the checks, had violated the obligation it had assumed to the plaintiff to make payment whenever requested so to do. (46 N. Y., 82, *supra.*)

This gave a cause of action to the plaintiff against the defendant and to him alone as the depositor, but not a cause of action in favor of the holder of the checks. It is not perceived why this does not give a cause of action to a depositor just as often as payment is demanded and refused, and for each sum demanded and refused. From the nature of the relations between depositor and depositary, the latter is to pay the sum demanded and at the time demanded. There is no necessity to wait at all in bringing the action to recover the sum demanded and refused. The depositor could not sue for the whole sum remaining in deposit, if there was a remainder, for the depositor has no cause of action for the whole deposit until payment of it has been demanded and refused. (6 Hill— ; 91 N. Y., *supra.*)

In the case under consideration, however, the two checks, of which payment was refused, represent this deposit not only, but substantially all the plaintiff had remaining in the defendant's bank ; and they were both drawn and delivered to the holder, and payment thereof demanded and refused at the same time. This demand and refusal was prior to September 1, 1869, and so was more than six years before the commencement of the action, which was on the 16th day of May, 1878. The statute was set in motion when the plaintiff had a cause of action against the defendant by his demand and its refusal. Where the statute has begun to run upon a cause of action arising upon demand and refusal, it will not be arrested or effected by a subsequent demand and refusal. (*Kelsey* v. *Griswold*, 6 Barb., 436 ; *Bruce* v. *Tilson*, 25 N. Y., 196.) It is the right of a party who has given to another a cause of action by a denial of the party's rights, to have the right determined within the time prescribed by statute for that purpose. But the learned justice who tried this case, would seem to have been quite in harmony with the view thus far expressed, but holds that the six year's rule of limitations does not apply to this case, but that the rule prescribed in section 386, Code of Civil Procedure, is applicable to this case. That section is, that in an action brought to recover a balance due upon a mutual, open and current account, where there have been reciprocal demands between the parties, the cause of action is deemed to have accrued from the time of the last item proved in the account on either side. We think the learned justice erred in the application of this section of the Code. It is identical with the former section of the Revised Statutes and the former Code upon the subject of mutual accounts. It has always been construed to mean accounts or charges consisting of demands for items or articles chargeable in favor of the one party against the other ; hence a mutual account consisting of items properly chargeable in an account upon one side and account of payments of money or property upon the other side, is not within this section. (*Peck* v. *N. Y. & Liv. U. S. M. S. S. Co.*, 5 Bosw., 236 ; *Albro* v. *Figuera*, 60 N Y., 630 ; *Green* v. *Disbrow*, 7 Lans., 381.) Besides, the case does not fall within the language of the section or its design. A depositary can have no *demand* against the depositor in any just sense. In the nature of the case and from the principles and the relation of depositor and depositary, that

section can have no application to this case. No matter how long the deposit has been standing, or frequently or seldom made or drawn against, there can be no cause of action by the depositor against the depositary until there has been a demand and refusal; and it is the demand and refusal that constitutes the cause of action, and not the state of the balance between drafts and deposits. The remainder of the deposit is in no wise affected by a demand to pay a portion of the deposits and refusal. The depositor has only a cause of action for the part of the deposit demanded and refused, and for so much, if he would protect his right in respect of that portion, he must bring his action within the six years' limitation. (*Peck* v. *N. Y. & Liv. S. M.*, 5 Bos., 226.)

A new trial should be granted, costs to abide event.

Judgment and order affirmed, with costs.