### DYKERS and VAN ALSTYNE *vs.* THE LEATHER MANUFACTURERS' BANK.

The insertion of the word *mem.*, in a check upon a bank in New-York, does not affect its negotiability, or alter the right of the holder thereof to present it to the bank and demand payment immediately. And where the bank pays such check, whereby the funds of the drawer in the bank are exhausted, the holders of other checks, not so endorsed, and which are presented for payment during banking hours on the same day, have no legal claim against the bank, if their checks are not paid.

Dykers *v.* The Leather Manufacturers' Bank.

Where a customer of a bank had given checks, to different individuals, for a much larger amount than his funds in the bank, and finding he could not make them all good during banking hours, went to the bank and directed the officers not to pay any of his checks until further orders from him, and finally drew out the whole of his funds for the purpose of making a rateable distribution thereof among the holders of all the checks, *Held,* that the owner of one of the checks, who had demanded payment thereof from the bank after the direction of the drawer not to pay it, and before the fund was drawn out, was not entitled to claim the amount thereof against the bank.

The mere priority in the drawing of a check upon a bank, is not sufficient to give to the holder of such check a legal right to preference in payment, out of the funds of the drawer, over the holders of checks subsequently drawn. And where different checks are presented to the bank at the same time, for sums which in the aggregate exceed the amount of the funds of the drawer, the officers of the bank are not bound to settle the conflicting claims of the holders of the different checks to priority of payment.

THIS case came before the chancellor upon appeal from a decree dismissing the bill of the complainants. The facts of the case, as established by the pleadings and proofs, are stated in the opinion of the chancellor.

*J. W. Gerard,* for the appellants.

*T. R. Lee,* for the respondents.

THE CHANCELLOR. This is an appeal from a decree of the late assistant vice chancellor of the first circuit. The object of the bill was to compel The Leather Manufacturers' Bank to pay a check drawn upon it by E. Sprague, who kept an account in the bank. There is some conflict of testimony as to the times where certain transactions took place, and particularly whether Sprague had instructed the officers of the bank not to pay his checks, at the time the check of the complainants was presented and payment thereof was refused. Upon that question I have no doubt that the assistant vice chancellor came to the correct conclusion. The facts of the case then, are substantially these: Sprague had borrowed money of Peck, and owed him considerable sums for balances upon the purchase and sale of stocks, amounting to $4500; for which amount he gave him a check

upon The Leather Manufacturers' Bank.  But Sprague not then having funds in the bank to pay the check, requested Peck not to present it immediately.  Without its being noticed by Peck, Sprague had written MEM. in one corner of the check, which mark was not noticed when it was afterwards paid by the receiving teller of the bank, by crediting it to Peck as a deposit.  Sprague had, from time to time, for several weeks, requested Peck to delay presenting the check to the bank for payment; promising to make the check good in the course of the week.  On Saturday, the 29th of June, Peck called at the bank for the purpose of having the check paid, if Sprague had funds to meet it; and being informed by the receiving teller that Sprague had not yet made his deposit, he left his bank book and the check with the receiving teller, and a note for Sprague, to be delivered to him if he came into the bank in his absence. Peck was gone a short time, and then returned to make his own deposit ; and in the meantime Sprague came in and deposited, on his own account, $12631.  The receiving teller, thereupon, passed the $4500 check to the credit of Peck, and notified the paying teller, that the check had been paid ; so that Sprague's account might not be overdrawn.  It further appears that, on the same day, Sprague bought stock of the complainants, to the amount of $3600, for which he gave his check on the same bank; promising them to make the check good on that day. He had also drawn checks, on the same day, on the bank, in favor of F. D. Robinson, and several other persons, the aggregate amount of which checks, including one for about $250 drawn a few days before, exceeded the whole amount of his deposit, exclusive of the $4500 check of Peck.  Shortly after Sprague made the deposit, he was informed that the $4500 check had been presented and paid ; and he then directed the paying teller to pay no more of his checks that day, without further orders from him.  In consequence of that direction the check of the complainants, and the checks in favor of Robinson and others, which were afterwards presented, were not paid.  But towards the close of the banking hours on that day, being pressed by Robinson for the payment of his check, Sprague concluded to

draw out the balance standing to his credit in the bank, and to distribute it rateably among all the holders of his checks which had not been paid. He drew it out accordingly, for that purpose; but Robinson and other holders of checks who were present with him in the bank, refused to let the complainants be sent for to receive their share of the fund, and compelled him to pay over the whole to the checkholders who were present. Whether the money was actually taken from him by force, or was given up by him voluntarily, upon their persuasion, is a question upon which the testimony of Sprague and some of the other witnesses examined on the part of the complainants are in conflict. But I think it is not material to the decision of this case to determine which of them is right. For I do not believe the money was taken from him by actual robbery; although it is very probable that pretty strong moral force was used, to induce him to give up the whole of the money to the disappointed checkholders who were present, instead of allowing him to retain a share thereof for the complainants.

There was nothing in the situation of the check of $4500 which rendered it improper for the bank to pay it. But as the holder of that check had waited so long, it is very probable that Sprague hoped he would wait still longer. Sprague might therefore have been disappointed at its being presented for payment on that day. But he does not pretend that there was any agreement between him and Peck that it was not to be presented for payment. And Peck swears to a state of facts which shows that Sprague had no right to presume on his further forbearance. The alleged custom of Wall-street, that an ordinary check, upon a bank, is to be converted into something contrary to its legal effect, by writing *mem.* in one corner thereof, certainly amounts to nothing. Indeed the weight of the testimony is, that this memorandum amounts to nothing more than an indication of an understanding that the check is not to be presented immediately for payment, so as to destroy the drawer's credit with the bank when he has not provided funds to meet the draft. Even if there was an express agreement, between Peck and Sprague, that this check should never be presented for payment,

the officers of the bank were not chargeable with any fault in paying it. For the testimony conclusively shows that the check was paid in the usual course of business, and without even noticing the three letters which are supposed to have changed its whole legal effect. There is nothing in the case to show that the legal and equitable claim of Peck, upon the funds deposited in the bank by Sprague, was not as good as the claims of any of the other parties in whose favor checks were drawn on the day the deposit was made; even if the officers of the bank had known all the facts, as they now appear upon the pleadings and proofs.

This check having been paid, and properly paid, by the officers of the bank, the fund remaining was insufficient to pay all the other checks which were presented that day, by several thousand dollars. And I know of no principle which gave the complainants a specific lien upon the funds of the drawer of their check, so as to entitle them to a preference, in payment, to the holders of other checks. It therefore became, between the holders of the several unpaid checks, a mere struggle for preference; as all could not be paid. And if Sprague intended to distribute the remaining funds in the bank, rateably among the several holders of the checks, instead of letting some be paid to the exclusion of others, he did right to forbid the payment of any of them, until such an arrangement could be made. All the witnesses agree, too, that it would have been contrary to the usages of banks to have accepted and paid any of the checks, after Sprague had directed the teller not to pay them. I have no doubt, either, from the testimony of the paying teller, when taken in connection with that of Sprague, that he directed a general suspense of the payment of all his checks, before any were presented for payment, subsequent to the making of the deposit, except the check of $4500, belonging to Peck.

It also appears, by the testimony of Sprague, that the whole amount which was subsequently drawn out, on the check presented by himself, was applied in payment of checks which had been presented for payment on that day. The holders of those checks, therefore, were equally entitled with these com-

Dykers *v.* The Leather Manufacturers' Bank.

plainants to the fund. To entitle the complainants to recover, they must show that they were entitled to a preference in payment over the other checkholders, who subsequently obtained the money. But there is nothing in this case showing them entitled to such a preference, or to show whose checks were first drawn; if that circumstance alone could give a preference. If the complainants suffered any injustice from the manner in which the fund remaining in the bank was appropriated, it was from the acts of Robinson and others, who appropriated the whole to themselves, contrary to the equitable principle upon which Sprague wished to distribute the money. The assistant vice chancellor was right, however, in supposing that the drawing a check upon a bank is not a specific appropriation of the funds of the borrower, to the payment of that particular debt, in preference to the holders of checks subsequently drawn. The drawer, therefore, might countermand the payment at any time before his draft was actually paid, or accepted by the bank. It would be utterly impossible for banks in New-York to do business, if they were obliged, at their peril, to settle the conflicting claims of the holders of checks, as to rights of priority arising from the time of drawing such checks. The cases referred to, of equitable assignment of particular funds, cannot therefore be applied here. The receiving of the money by Sprague, and the appropriation of the same to the payment of the holders of other checks, drawn by him upon the same fund, who had equal claims thereon with these complainants, gave no equitable claim upon the bank, which could entitle these appellants to call upon it to pay the money a second time.

The decision of the assistant vice chancellor was right; and the decree appealed from, must be affirmed, with costs.