## SUPREME COURT.

WILLIAM J. FINLAY agt. THE AMERICAN EXCHANGE BANK.

BLISS & HUBBARD agt. THE SAME.

WORTHINGTON agt. THE SAME and others.

WILLETTS, President of the American Exchange Bank, agt. FINLAY and others.

The Commercial Bank of Toledo, Ohio, on the 27th Nov., 1854, suspended payment, and gave notice thereof on the same day to the American Exchange Bank, New-York. It had a balance to its credit in the latter bank, on that day, of over $4,000; which grew out of the business relations between them, as exchange banks, for several years previous—each paid interest on the balances against it, and each paid as drawn for.

*Held,* that the drawing of sight drafts, or checks, of the Commercial Bank of Toledo, in favor of the plaintiffs, did not operate in law, any assignment to

Willetts, President of the Am. Ex. Bank, agt. Finlay and others, &c.

the holders, either legal or equitable, of any funds in the hands of the American Exchange Bank.

The presentation of such paper to the American Exchange Bank, after it had received notice of the suspension of the Commercial Bank, imposed no obligation upon the former bank to pay the paper, as between that bank and the holders. It was not *liable* to the plaintiff or the holders of the paper.

To enable the court to take jurisdiction in an interpleader suit for a particular fund, so as to settle the equities between all the parties, the amount of the fund must be ascertained with sufficient certainty to enable it to be brought into court; unless the parties can agree to fix the amount.

Where there is a fund due to an insolvent bank, and the holder, a bank, brings an interpleader suit against the respective claimants, the proper *parties* to such suit are, the *receiver* of the insolvent bank, the *attaching creditors,* and the *sheriff* who has attached for them; but not the *bill-holders* or *check-holders* of such bank; because the latter have no *lien* upon the fund, either as assignees in equity or otherwise.

In the sense of an *implied agreement* between the drawer of a check and the holder, that the drawer will not withdraw his funds, but leave them in the banker's hands to meet the check, the drawing of the check is to be regarded as an *appropriation* of the funds, but in no other sense.

And this operates no *assignment* of such moneys, nor an appropriation of them in fact, in the sense which would give the holder a *lien,* either legal or equitable upon the fund.

Where the fund goes to the receiver in another state, the bill-holders will be retained as parties; and after it has been adjudged which of the interpleading parties is entitled to priority, the bill-holders may ask that their several claims be paid out of the fund as against the receiver, and before the receiver shall take the fund from the court.

*New-York Special Term, July,* 1855.

THE first three suits were brought against the American Exchange Bank for payment of sight drafts, or bank checks, of the Commercial Bank of Toledo, Ohio, which the respective plaintiffs held.

The last suit was brought by the American Exchange Bank, against the several plaintiffs as an interpleader suit.

The following facts were found by the court, viz. :—

The plaintiffs held the paper which is set forth in their respective complaints, and it was presented to the American Exchange Bank for payment, at the time and in the manner averred in said complaints respectively : payment was refused, for which these suits were brought.

At the time of presentation, the American Exchange Bank had an account with the Commercial Bank of Toledo, and had in its hands, of the Toledo bank funds, about $10,800. The Toledo bank held, also for collection, about $14,000 of paper, part of which belonged to the American Exchange Bank, and a part to its customers, which had been remitted by the American Exchange Bank to the Toledo bank for collection.

On the 27th of November, 1854, the Toledo bank suspended payment, and the American Exchange Bank received a friendly notice of such suspension the same day, by telegraph. After such notice, it refused to pay the Toledo bank drafts, including those in question. A subsequent balance struck by the American Exchange Bank, in March, 1855, showed that the American Exchange Bank, upon adjustment of balances as the accounts stood on the 27th of November, 1854, was indebted to the Toledo bank in over $4,000.

This balance grew out of the business relations between the two banks, which had existed for several years prior to the 27th of November, 1854, by which the American Exchange Bank became agent of the Toledo bank, to collect its eastern paper, and the Toledo bank became agent of the American Exchange bank, to collect its western paper. Each one also further acting for the other, as in the regular course of their business was required.

The practice was, for each to collect, and carry the collections to the credit of the other, and to pay as drawn for. The American Exchange Bank paid four per cent. interest on balances due by it to the Toledo bank, and charged the current-rate, not exceeding seven per cent., on balances due from the Toledo bank to the American Exchange Bank.

These suits were all commenced within a few weeks after the dishonor of the paper.

The above are the facts as found by the court.

The following is held to be the law, as applicable to the facts, viz.:—

*First.* The drawing of the paper in favor of the plaintiffs did not operate, in law, any assignment to the holders, either legal

or equitable, of any funds in the hands of the American Exchange Bank.

*Second.* The presentation of such paper to the American Exchange Bank imposed no obligation upon such bank to pay the paper, as between the bank and the holders.

*Third.* The American Exchange Bank is not liable to the plaintiffs by reason of any of the facts above set forth.

*Fourth.* The several actions above named are to be dismissed, but without costs to either party.

—— —— *for motion.*
—— —— *opposed.*

COWLES, Justice. This bill has not all the essential features of a bill of interpleader; for the amount of the fund is not ascertained with sufficient certainty to enable it now to be brought into court, and allow the plaintiff to be discharged from the further proceedings in the suit.

But with the understanding which was entered into in that respect on the trial, the amount of the fund can be hereafter settled; and the bill is thus so far in the nature of an interpleader suit that the court can take jurisdiction of the case, and settle the equities between all of the parties.

The parties will, if they can agree, fix upon the amount of the fund; if not, a balance must be struck, under the order of the court, to be hereafter made; and the balance so struck will be regarded as the fund subject to the decree, and to be disposed of by it.

The next question is, who are proper parties to interplead for this fund?

The receivers, as respecting the Toledo bank, are clearly proper parties; because in the event of there being no other claimants, they are entitled to the whole.

The attaching creditors, and the sheriff who has attached for them, are also proper parties; for by their attachment they have acquired a right to, and interest in those funds, unless some party has a superior and better right.

They are, therefore, to be decreed to interplead for this fund.

The other parties, the bill-holders, or, as they term themselves, the check-holders, also claim to have a lien upon this fund, as assignees in equity of the same, under and by virtue of their checks.

\ It has often been said by the elementary writers, and the same language is used by judges in many of the reported cases, that a bank check is an appropriation by the drawer of so much of his funds in the hands of his banker as is necessary to pay the check, and that there it should remain until the check is paid. (*Cruger* agt. *Armstrong*, 3 *John. R.* 5; 3 *Kent's Com.* 104, *n.*, 7*th ed.*; *Domic* agt. *Kyle*, 1 *Kelly*, 304; *Matter of Brown*, 2 *Story's Rep.* 502; *Story on Prom. Notes*, § 489; *Bayles on Bills*, 3*d Am. ed.* 79, *note.*)

But I have looked in vain through the books for a single case where, in, a suit by the holder against the *drawee*, it has been held that the holder had a right of action against the drawee for non-payment of the check; nor can I find any adjudication which leads to the inference, that the appropriation of funds so spoken of raises anything like privity of contract between the holder and drawee.

The theory, as respects a check, undoubtedly is, and such should be the fact, that it is drawn on a banker, against a fund of the drawer actually in the banker's hands, and which the banker is supposed to stand ready to pay on presentation of the check. When that is the case, the drawer, by the mere act of drawing the check, if he is honest, does devote so much of his funds in the hands of his banker to the holder, and cannot, without a breach of good faith, withdraw them.

The authorities hold that his contract with the holder is, that the banker will pay on presentation, and if he does not, then the drawer himself will.

In the sense of an implied agreement between the drawer and holder, that the drawer will not withdraw his funds, but leave them in the banker's hands to meet the check, I readily subscribe to the doctrine, that the drawing of the check is to be

regarded as an appropriation of the funds ; but in no other sense than that.

Yet this operates no *assignment* of such moneys, nor an appropriation of them in fact, in the sense which would give the holder a *lien*, either legal or equitable, upon the fund—certainly not so as to bind the banker. And with reason and on principle, because, in the first place, there is no privity of contract between the holder and drawee, whatever there may be between drawer and drawee. In the next place, the drawer may stop the payment of his check, and the banker is bound by the countermand, which could not be the case if the check operated an assignment in favor of the holder, and became binding on the drawee. (*Dyckers* agt. *Leather Manufacturers' Bank*, 11 Paige, 616.)

In *Bayles on Bills*, 3d *Am. ed.*, *p.* 32, *note*, it is said :

"In *Fry and Chapman's Bankruptcy*, in the year 1829, several holders of checks on the bankrupts claimed to prove, alleging that they were equitable assignees of choses in action. *The commissioners took time to consider, and afterwards disallowed the claim;*" and this is the only authority cited in support of the text, which says, *it is· said* that the holder of an unpaid check, as assignee of a chose in action, has an equitable claim upon the drawee, and, in the event of the bankruptcy, may prove under the fiat.

Neither in that work nor in *Story on Promissory Notes*, both of which treat at some length of checks, as contradistinguished from bills of exchange, is anything to be found which, as an adjudication, supports the doctrine that, as between holder and drawee, the check is an equitable assignment of the funds in the drawee's hands.

In *Bellamy* agt. *Magoribanks*, (8 *Eng. Law & Eq.*, 517,) the attorney-general argued : " The banker owes no duty to the holder, and is liable to no action at his suit, if the check is not honored ;" and PARKER B., in the same case, reiterates the same doctrine.

These, although mere *dicta*, show what was supposed to be the well-understood rule on that subject in England.

In *Bullard* agt. *Randall*, (1 *Gray's Rep.* 605,) the supreme court of Massachusetts held, directly, that a check did not operate an assignment of the funds in the hands of the banker; but the ground on which it is placed, viz., that it was drawn only for a part, but not for the whole of the drawer's funds, is not very satisfactory, and is certainly at variance with the exceptions to such a rule in certain cases, as laid down in 5 *Whit.* 577. But in this state the rule seems to be settled. (*Dyckman* agt. *Leather Manufacturers' Bank*, 11 *Paige*, 612; *Chapman* agt. *White*, 2 *Seld.* 412.)

In this last case, the depositary had funds of the drawer, more than sufficient to pay the check, but, as in the case at bar, had the right to, and probably had, used them in the regular course of business, and paid interest for their use, as was also done in this case.

In the case last cited, GARDINER, J., *held*, that the money became the property of the depositary, and that the depositor had a mere right of action for the money; that the draft did not operate an assignment in favor of the holder.

The facts in that case are very analogous to the case at bar. In both cases the depositary had moneys on which interest was paid. In both cases value was paid for the drafts, and the drafts were protested and dishonored. The paper in both cases is identical in phraseology; in both cases was drawn on a bank, and payable on presentation. No rule can be well conceived which, under the facts, would not equally apply to both cases; and the rule as laid down in that case is decisive of this.

I have thus far treated this as a case of bank checks, as contradistinguished from bills of exchange, as I still think it is, notwithstanding that GARDINER, J., in *Chapman* agt. *White*, called the paper in that case a bill of exchange.

If, however, these drafts are to be treated as bills of exchange, and subject to the rules which govern that class of paper, then the authority is abundant that a bill of exchange does not operate an assignment of the funds in the drawee's hands

in favor of the holder. (*Luff* agt. *Pope*, 5 *Hill*, 413; *Cowperth-waite* agt. *Sheffield*, *id.* 243, *and the cases there cited.*)

On no ground can I discover authority for holding that these drafts operated any assignment of the funds in the hands of the holders; and if not, then much less could it be claimed that the non-payment on presentation gave the holders a personal claim on the American Exchange Bank.

I have failed to allude to another ground on which, as it seems to me, the American Exchange Bank were excused from paying. They (The American Exchange Bank) had notice of the stoppage of the Toledo bank; they held funds of the Toledo bank at the time, but had remitted in their own behalf, and for customers to the Toledo bank, a still larger amount of paper for collection, on which last paper they supposed themselves liable. Whether they were or were not, they surely had a right to retain the moneys of the Toledo bank until there was a final adjustment of balances. Their rights were first to protect themselves; and on this ground alone they had a right to decline honoring these checks.

The bill-holders have not a lien on the funds in the hands of the Amercan Exchange Bank, nor have they a claim upon the bank in its corporate capacity for non-payment of the checks.

The several suits at law, which these bill-holders have brought, will be dismissed.

The decree in this suit will be, that the bill-holders are not proper parties to interplead for the fund in this action.

They are wrong in suing the American Exchange Bank. The American Exchange Bank is wrong in asking that they be decreed to interplead.

The bank will not, therefore, have costs on the dismissal of the suits brought by the bill-holders; nor will the bill-holders have costs against the American Exchange Bank for bringing them in as parties in this suit. In the decree in *this action* nothing will be said respecting the suits brought by the bill-holders. They are only mentioned here for the reason that the cases were all tried together by direction of the court. They

will all be treated a ssuits distinct, however, from this, but one opinion will answer for all. Still, the bill in this suit will not be dismissed as to those bill-holders. It may be a question, and a serious one, whether, as creditors of the Toledo bank, they should not be paid their debts before the moneys, now in the American Exchange Bank, are delivered over to the receivers to be taken from the state.

The parties are now all before the court; the claims of each one can be established, and the equities as to all settled. For that purpose the bill-holders will be retained as parties.

The decree will provide that the receivers and attaching creditors interplead for the fund.

It will provide that the bill-holders hold their several demands against the Toledo bank as set forth in the complaint. After it has been adjudged which of the two interpleading parties is entitled to priority, it will provide that the bill-holders may ask that their several claims be paid out of these funds as against the receivers, and before said receivers shall take such funds from the court; but it will also provide that under no circumstances can the bill-holders have priority upon such fund over the attaching creditors.

All questions of cost, not above passed upon, are reserved until the final decree.