Estate of B. K. Smith, in bankruptcy, to Robertson's & Herndon, Dr.

---

## Case No. 12,990.

### In re SMITH.

[15 N. B. R. (1877) 459; [1] 2 Cin. Law Bul. 119.]

District Court, S. D. Ohio.[2]

BANKRUPTCY — LIEN — BANK CHECK — APPROPRIATION OF FUNDS.

1. Where one who has purchased a cheque of one bank upon another fails to present it for payment until the drawer has been adjudged a bankrupt, he is not entitled to priority of payment from the fund in the hands of the assignee, although there were sufficient funds in the hands of the drawee at the time of presentment to pay the cheque.

[Cited in Re Smith, Case No. 12,992.]

2. Such cheque creates no appropriation of or lien upon the fund in the bank, nor does it give a right of action against the drawee. Bank of Republic v. Millard, 10 Wall. [77 U. S.] 152, followed.

In bankruptcy. On certificate of register allowing the claim of Jacob Witteman as a preferred debt.

---

[1] [Reprinted from 15 N. B. R. 459, by permission.]

[2] [Affirmed by circuit court. Case unreported.]

The facts found by the register were as follows: Charles A. Smith, the bankrupt, was a private banker in Lebanon, Warren county, Ohio, receiving deposits, loaning money and selling exchange: being styled "the Warren County Bank." On the 20th day of December, 1872, he drew and sold to Witteman a draft or check, numbered seven thousand two hundred and forty-three, on the First National Bank of New York, for the sum of eight hundred and thirty-six dollars and sixty-one cents, having at the time and afterwards until the instrument was presented for payment, funds on deposit with said bank sufficient to pay the same, placed there to be drawn upon in the course of his business as a banker. On the 30th of May, 1873, he conveyed all his property to trustees, for the benefit of his creditors, being insolvent; and the trustees, by notice to his New York depositary, stopped the payment of his outstanding drafts and checks. On the 11th of June a petition in bankruptcy was filed against him, and the voluntary assignment was superseded. On the 20th of June, the Witteman check or draft was presented to the drawee in New York City, and payment refused; the excuse stated in the protest being the notice of the trustees forbidding payment. The balance on deposit at the time was one thousand six hundred and ninety dollars and six cents, exceeding all the drafts and checks drawn against it. This sum was afterwards withdrawn by the assignee in bankruptcy, and is now held by him. The draft or check was purchased and paid for at the time by Witteman in good faith, with no suspicion of the financial weakness which ended in Smith's suspension and assignment five months afterwards; and the amount of the draft, at the date it was drawn, was credited by Smith to the account of the drawee. These facts, with the original draft or check and the protest, fully appear in the petition of the creditor Witteman and in the agreed copies of the account between Smith and the First National Bank, as it appears on the books of each, covering the period from the date of the instrument until it was presented for payment.

The following is a copy of the instrument in question:

"$836.61. Warren County Bank. Charles A. Smith, Proprietor. Lebanon, O., December 20, 1872. Pay to the order of Jacob Witteman, Esq., eight hundred and thirty-six dollars and sixty-one cents. (Signed) Charles A. Smith. To the First National Bank, New York City." .

R. B. Wilson, for petitioner.
Ward & Probasco, for assignees.

Before BROWN and SWING, District Judges.

BROWN, District Judge. We fully concur in the opinion of the register, that the instrument in question is a check and not a bill of exchange. It possesses the two peculiarities of the former, viz.: it is drawn upon a bank and is payable immediately upon presentment; and the fact that it is drawn by one bank upon another in a distant state does not deprive it of the character with which these features have stamped it. In re Brown [Case No. 1,985]; Roberts v. Corbin, 26 Iowa, 315. We entertain no doubt of the correctness of the proposition that in a case of this kind the assignee has no greater rights than the bankrupt. Whatever defenses are available to the latter are also open to him; he takes the property subject to all just claims by the way of lien or otherwise, and except in cases of fraud where he represents the creditors, his title is subject to the same equities as that of the bankrupt. Mitchell v. Winslow [Case No. 9,673], and notes; In re Wynne [Id. 18,117]; Brown v. Heathcote, 1 Atk. 160; Jewson v. Moulson, 2 Atk. 417; Mitford v. Mitford, 9 Ves. 87; Tiffany v. Boatman's Inst., 18 Wall. [85 U. S.] 387.

While there is some conflict as to the exact nature of the contract between a depositor and his bank, it is now settled, so far as the federal courts are concerned, that the general relation between them is that of debtor and creditor; that in the absence of an agreement to the contrary, its deposits are not special, but become the property of the bank, and that it does not stand in the character of a trustee. Bank of the Republic v. Millard, 10 Wall. [77 U. S.] 152; Foley v. Hill, 2 H. L. Cas. 28; In re Corn Exchange Bank [Case No. 3,243]; Carr v. National Security Bank, 107 Mass. 45, 48; Chapman v. White, 6 N. Y. 412; In re Bank of Madison [Case No. 890]; In re Franklin Bank, 1 Paige, 254. By accepting the deposit the bank impliedly agrees that it will honor the checks of its depositors in the order in which they may be presented, to the full amount of the deposit, subject only to revocation by death, bankruptcy, or a direct order not to pay. Dykers v. Leather Manuf'rs' Bank, 11 Paige, 612; Butterworth v. Peck, 5 Bosw. 341. No contract exists primarily between the holder and drawee of a check, and the cases which have sustained an action in favor of the former, have proceeded either upon the theory that the check operated as an equitable assignment of the fund, pro tanto, or upon the familiar principle that the person for whose benefit a contract is made may sustain an action upon it. Munn v. Burch, 25 Ill. 21; Chicago M. & F. Ins. Co. v. Stanford, 28 Ill. 168; Fogarties v. President, etc., of State Bank, 12 Rich. Law, 518; National Bank v. Elliot Bank, 5 Am. Law Reg. 711; Weston v. Barker, 12 Johns. 276. The authority of these cases, however, is denied in Bank of the Republic v. Millard, 10 Wall. [77 U. S.] 152, above quoted, very recently affirmed in First Nat. Bank v. Whitman [94 U. S. 343], and the doctrine there announced that no such action will lie, must be accepted as the

law of this case. It is abundantly supported by such cases as Bullard v. Randall, 1 Gray, 606; Chapman v. White, 6 N. Y. 412; Butterworth v. Peck, 5 Bosw. 341; Second Nat. Bank v. Williams, 13 Mich. 282; Dykers v. Leather Manuf'rs' Bank, 11 Paige, 616; Wharton v. Walker, 4 Barn. & C. 163; Warwick v. Rogers, 5 Man. & G. 374, and must be regarded as overruling the leading case of Munn v. Burch, to the contrary.

While we need not for the purposes of this case question the proposition that a check is an assignment, pro tanto, of the depositor's money in the hands of the bank, it still remains to be decided when it takes effect as such assignment; not, we conceive, when it is delivered to the payee, because the check may be revoked by others subsequently drawn but earlier presented. If checks worked an immediate transfer of the fund, an action would lie in favor of the payee, and no banker would be safe in paying them, since he could never know that the money had not already been assigned to persons holding prior checks. If, in such case, the bank and its contents were burned before the check, in the ordinary course of business, was presented, the loss would be that of the payee. We deem it a logical conclusion from the case above cited, that if the check be an assignment at all, it does not take effect as such until accepted or certified by the bank, unless perhaps it be taken upon the faith of a previous promise to honor it. In Bullard v. Randall, 1 Gray, 605, it was held that a check constitutes no assignment until presented for payment and accepted by the bank, and where the bank was garnished by a creditor of the depositor after the check was drawn, but before it was presented, it was held that the garnishing creditor had the prior legal claim to the fund. If this case be law, we do not see how the petition under consideration can be supported. See also Butterworth v. Peck, 5 Bosw. 341. Whenever the check is accepted or certified a new contract arises between the payee and the bank, upon which an action may be brought, upon a subsequent refusal to pay. There is no reason why checks should stand in any better position than assignments of other choses in action, against which the other party to the contract is always protected until notice of the assignment. Were the question an original one, we should be disposed to regard a check rather as a power of attorney to draw a certain amount of money and appropriate it to the payee's use, than an absolute appropriation of the amount. The power of revocation remaining in the drawer is an incident to the power of attorney but not to the assignment. Although in several cases, (notably the following in Ohio: Morrisons v. Bailey, 5 Ohio St. 13; Andrew v. Blachly, 11 Ohio St. 89; Stewart v. Smith, 17 Ohio St. 82, 85), a check is characterized as an appropriation or equitable assignment of a fund; it differs from a bill of exchange only in being payable upon presentment, without grace, and in the fact that no notice is necessary to charge the drawer.

There are several cases strongly adverse to the position assumed by the petitioner. In Dickey v. Harmon [Case No. 3,894], a draft upon one Jameson was given by the bankrupts to Sackett, and presented to the drawee for acceptance. The drawee admitted himself indebted to the bankrupt in the amount of the draft, but refused to accept because the money in his hands had been attached by the creditors of the bankrupt. The only question was whether the complainants, the assignees of the bankrupt, or Sackett should have the money in the hands of Jameson. It was contended that the draft was an assignment of the funds in the hands of the drawee, and gave the payee an equitable right to recover the money, and that it was not revoked by the subsequent bankruptcy, but the court held the assignee entitled to the money. In Bank of Commerce v. Russell [Id. 884], complainant, in the course of its banking business, sent certain notes to a firm of bankers at Pleasant Hill, Missouri, for collection. The firm collected the money and, having two thousand dollars on deposit in the Second National Bank of St. Louis subject to their order, sent the complainant a draft on this bank for a portion of the money collected. The draft was presented, payment demanded and refused, and the draft protested. The drawers having failed, and the assignee having come into possession of the two thousand dollars deposited in the Second National Bank, it was claimed: (1) That the money was held in trust for the complainant, and hence that it did not vest in the assignee. (2) That the drafts drawn by the bankrupts amounted to an equitable assignment of that amount in favor of the complainant. The court—Dillon, J.,—held that the complainant was not entitled to relief. Except that the instrument is termed a draft, the case is directly in point. The following cases are very nearly if not quite analogous: First Nat. Bank of Mount Joy v. Gish, 72 Pa. St. 13; Randolph v. Canby [Case No. 11,559]; Walker v. Seigel [Id. 17,085].

It is not denied there are several cases which support the position taken by the register; but so far as they conflict with the leading case of Bank of the Republic v. Millard [supra], we are constrained by the latter as a binding authority. In McGregor v. Loomis, 1 Disn. 247, a depositor drew a check upon his banker which was presented and payment refused, although the banker still held the funds of the depositor. The banker then failed, and his assignee claimed the depositor's money, notwithstanding the depositor had ordered the banker to pay it out, and that order was presented, thus giving him notice of the depositor's appropriation of the fund. It was held by a divided court, that the check was an absolute appropriation of so much money in the hands of the banker to the holder of the check, and there it ought

to remain until called for. This case seems to be not only in direct conflict with Chapman v. White, but irreconcilable with the reasoning in the case of Bank of the Republic v. Millard. We do not consider the other Ohio cases as conflicting at all with the position taken here, as the point in each seems to have been whether the instrument was a check or draft, and payable with or without grace. In Blin v. Pierce, 20 Vt. 25, and Ex parte South, 3 Swan. 392, the orders were accepted before the bankruptcy, and the question there involved did not here arise. To the same effect is Mandeville v. Welsh, 5 Wheat. [18 U. S.] 277, 286. In Re Brown [Case No. 1,985], certain checks were drawn in favor of one Curtiss, by Brown's agent, as collateral security for a promissory note made by Curtiss and payable to Brown, for his accommodation. The checks were made payable on two certain days, and were presented on those days, but not on the last days of grace; but during the three days of grace, the drawer had not sufficient funds in the bank on which they were drawn to pay them, although there was a small balance there in his favor. It was held that the instruments were checks, were properly presented, and were not entitled to grace, and that Brown was not entitled to notice of protest. It is true that in the conclusion of the case Mr. Justice Story decides that the petitioners are entitled to be relieved in equity to the full amount of the debt proved by them, for which the checks were given by the bankrupt; but from a careful perusal of the case we do not gather the inference that the petitioners were decreed any priority of payment. Indeed, the case did not admit of a preference, as there were insufficient funds in the bank at the time the checks were made payable, or for three days thereafter. The main question in the case was whether the fact they were made payable on a future day characterized them as bills of exchange, and it was held it did not. That question does not arise in this case.

The case of Roberts v. Corbin, 26 Iowa, 315, is admitted to be upon all-fours with the one under consideration. It was held: First. That a draft drawn by one banker upon another in a different state, having funds of the drawer on deposit, in favor of a third person as payee, is to be regarded simply as a banker's check, and not as a foreign bill of exchange. This proposition we expressly affirmed at the outset of this opinion. Second. The holder of such a check may maintain an action thereon, before acceptance, against the drawee thus having the funds of the drawer in his hands, and wrongfully refusing to pay the same. Third. A general assignment of the drawer for the benefit of his creditors, after drawing the check, but before the same is presented, will not invest his assignee with the right to the money represented by the check, nor affect the rights of the payee thereto. Fourth. The assignee, in a general assignment for the benefit of creditors, takes the property of his assignor, subject to all the equities existing against it in favor of third parties. He merely stands in the shoes, and succeeds to the rights of his assignor. It will be observed that the second proposition lies at the foundation of this whole opinion, and the correctness of this is expressly denied by the supreme court of the United States in Bank of the Republic v. Millard. The case is reasoned with a good deal of care, although it does not carry the weight it would have, had all the judges concurred in the opinion.

While it is conceded that the petitioner possesses the same rights, as against the assignee, that he would have against the bankrupt, the only property of the latter upon which he could have the pretense of a lien, by way of appropriation, would be that in the hands of the bank, and if he cannot enforce that lien, that is, if he has no right of action against the bank, it is because no such lien or appropriation exists, until the check is accepted or certified. We do not see how, if Smith had settled with the bank before this check was presented, and had drawn his deposits, the creditor would have a lien upon that money, or indeed anything but a bare right of action against the drawer. It may be assumed that he intended to invest the payee with the right of drawing the money represented by the check, but his subsequent intent to revoke or countermand that, must be conclusively presumed from the act of assignment. His funds in bank, unappropriated, undoubtedly passed to his assignee, under the authorities above quoted, and we are constrained to hold that inasmuch as this check was never presented, it wrought no appropriation. We lay no stress upon the want of diligence in presenting the check until six months after it was drawn, as affecting the legal rights of the payee, although he thereby fails to show that equitable title to relief which prompt action upon his part might have suggested. Conroy v. Warren, 3 Johns. Cas 259.

As there was no appropriation and no right of action against the drawee, we think the petitioner is not entitled to priority of payment, and his petition must be dismissed.

On appeal to the circuit court this case was affirmed by Mr. Justice Swayne. [Case unreported.]