## Case No. 12,063.

### ROSENTHAL v. MASTIN BANK et al.

[17 Blatchf. 318; 9 Reporter, 272; 21 Alb. Law
J. 28; 26 Int. Rev. Rec. 13; 27
Pittsb. Leg. J. 160.] [1]

Circuit Court, S. D. New York. Nov. 25, 1879.

BANKRUPTCY — DRAFT—ACTION TO RECOVER
AMOUNT PAID.

1. A bank in Missouri, having money on de-
posit in a bank in New York, to the amount of
over $2,000, drew a draft on the latter on Au-
gust 1st, for the sum of $1,998, to the order of
R., for which R. paid the former $2,000. On
the 3d of August, the Missouri bank assigned
to C. all its property, in trust for its creditors, by
an assignment valid by the laws of Missouri,
and the New York bank was notified of such as-
signment on the same day. On the 5th of Au-
gust the draft was presented by R. to the New
York bank. Payment of it was refused. R., on
the 5th of August, attached the money held by
the New York bank, by judicial process, in a suit
against the Missouri bank, on the draft, and aft-
erwards recovered a judgment therein. He then
brought this suit against the two banks and C.,
to have the $1,998 paid to him. On a demurrer
to the bill: *Held*, that the right of C. to the
money was superior to that of R.

[Distinguished in Covert v. Rhodes, 48 Ohio
St. 74, 27 N. E. 94. Cited in Harrison v.
Wright, 100 Ind. 519.]

[Cited in brief in Appeal of Waynesburg-Col-
lege, 111 Pa. St. 130, 3 Atl. 20.]

2. The draft was not accepted by the drawee,
nor charged by it against the drawer, nor did
the draft operate as an assignment of the funds
of the drawer in the hands of the drawee.

[Cited in Seligman v. Wells, 1 Fed. 302.]
[Cited in Moore v. Davis, 57 Mich. 255, 23
N. W. 802.]

---

[1] [Reported by Hon. Samuel Blatchford, Cir-
cuit Judge, and here reprinted by permission. 9
Reporter, 272, and 27 Pittsb. Leg. J. 160, con-
tain only partial reports.]

In equity.

John Henry Hull and Joseph I. Stein, for plaintiff.

Holmes & Adams, for Mastin Bank and Coates.

Peabody, Baker & Peabody, for Metropolitan Nat. Bank.

BLATCHFORD, Circuit Judge. This is a suit in equity brought by the plaintiff, a citizen of New York, against the Mastin Bank, a Missouri corporation, and Kersey Coates, a citizen of Missouri, and the Metropolitan National Bank, a banking corporation established under an act of congress and doing business in the city of New York. The suit was brought in the supreme court of New York, and was removed into this court by the plaintiff.

The facts of the case are these: On the 1st of August, 1878, the plaintiff, at Kansas City, Missouri, paid to the Mastin Bank, which was located there, the sum of $2,000, in exchange for which said bank delivered to him a draft dated at Kansas City, August 1st, 1878, and signed by its cashier, addressed to the Metropolitan National Bank, New York, and containing this direction: "Pay to the order of Max Rosenthal nineteen hundred and ninety-eight dollars." At that time the Metropolitan National Bank had in its hands the sum of $1,998 belonging to the Mastin Bank. Said draft was presented at the Metropolitan National Bank on the 5th of August, 1878, by the plaintiff, and payment of it was demanded, but said bank refused to pay it, or to pay the $1,998, and the draft was protested and notice of such presentment, refusal and protest was given to the Mastin Bank. The Metropolitan National Bank then had, and ever since has had, and now has, the said sum of $1,998 in its possession. After such demand and refusal the plaintiff commenced a suit in the supreme court of New York for the city and county of New York, against the Mastin Bank, in which suit moneys belonging to the Mastin Bank in the hands of the Metropolitan National Bank were attached, and thereupon the latter bank gave to the sheriff a certificate, dated August 5th, 1878, which said: "We hold twenty-three hundred dollars from funds to the credit of the Mastin Bank, Kansas City, Mo., in matter of attachment of Max Rosenthal, plaintiff, for nineteen hundred and ninety-eight dollars." On the 17th of October, 1878, the plaintiff recovered judgment in said suit for $2,133.15. On the next day the sheriff, in behalf of the plaintiff, demanded the amount of said judgment from the Metropolitan National Bank, but said bank refused to pay it, stating that the money was claimed by the defendant Coates, as assignee of the Mastin Bank by virtue of an assignment made August 3d, 1878, at Kansas City, by the Mastin Bank to said Coates. Coates claims said $1,998 by virtue of such assignment. The assignment is dated August 3d, 1878, and assigns to said Coates "all of the lands, tenements, goods, chattels, effects and credits of the said the Mastin Bank, of every kind and nature, wheresoever situate, to have and to hold the same, unto him, the said Kersey Coates, and his heirs, successors and assigns, in trust for the use and benefit of all the creditors of the said the Mastin Bank, in proportion to their respecfive claims, as by the law in case of voluntary assignments made and provided." By a paper at the foot of said assignment, dated the same day and signed by said Coates, he accepted said trust. The assignment and acceptance were recorded on the same day. The Metropolitan National Bank was notified of said assignment on the 5th of August, 1878, by a telegram. The bill claims, that, by the delivery of the draft to the plaintiff the Mastin Bank transferred to him $1,998 out of its moneys which were then in the hands of the Metropolitan National Bank, and that he is the owner of the said $1,998. By a stipulation, all of the defendants waive the right of a trial at law, and the plaintiff agrees that the sheriff will not bring any action against the Metropolitan National Bank by reason of any of the matters in issue in this suit. The prayer of the bill is, that, the said sum of $1,998 may be adjudged to be the property of the plaintiff, and may be paid by the Metropolitan National Bank to the plaintiff, free from any claims or liens thereon of the defendant Coates, or any of the other defendants. The Mastin Bank and Coates have put in a joint and several general demurrer to the bill for want of equity, and the Metropolitan National Bank has also demurred generally to the bill for want of equity.

The question presented for decision is, whether the Metropolitan National Bank ought to pay the $1,998 which it owes, as a debtor, to the plaintiff. It is contended, for the plaintiff, that he could have sued the drawee, on the draft, before its acceptance, and even before presenting it to the drawee, and that the assignment to the defendant Coates, after the drawing of the draft and before it was presented to the drawee, did not carry to Coates the title to the $1,998, or affect the right of the plaintiff thereto; that Coates took the property of the assignor, under the assignment, subject to all the equities existing against it in favor of the plaintiff; that Coates succeeded only to the rights of the assignor; and that the drawing of the draft operated as an assignment to the plaintiff of $1,998 then in the hands of the drawee.

It was decided by the supreme court of the United States, in Bank of the Republic v. Millard, 10 Wall. [77 U. S.] 152, that the holder of a check drawn on a bank cannot sue the bank for refusing payment of it, in the absence of proof that it was accepted by the bank, or was charged against the drawer. In that case the court say: "It is no longer an open question in this court, since the de-

cision in the cases of Marine Bank v. Fulton Bank, 2 Wall. [69 U. S.] 252, and of Thompson v. Riggs, 5 Wall. [72 U. S.] 663, that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but, when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives, as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall, from time to time, draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst and Campbell, in the house of lords, in the case of Foley v. Hill, 2 H. L. Cas. 28, and they all concurred in the opinion, that the relation between a banker and a customer who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authority is to the same effect. As checks on bankers are in constant use, and have been adopted by the commercial world generally, as a substitute for other modes of payment, it is important, for the security of all parties concerned, that there should be no mistake about the status which the holder of a check sustains towards the bank on which it is drawn. It is very clear that he can sue the drawer, if payment is refused, but can he, also, in such a state of case, sue the bank? It is conceded, that the depositor can bring assumpsit for the breach of the contract to honor his checks, and, if the holder has a similar right, then the anomaly is presented, of a right of action upon one promise, for the same thing, existing in two distinct persons, at the same time. On principle, there can be no foundation for an action on the part of the holder, unless there is a privity of contract between him and the bank. How can there be such a privity when the bank owes no duty, and is under no obligation to the holder? The holder takes the check on the credit of the drawer, in the belief that he has funds to meet it, but in no sense can the bank be said to be connected with the transaction. If it were true, that there was a privity of contract between the bank and the holder when the check was given, the bank would be obliged to pay the check, although the drawer, before it was presented, had countermanded it, and although other checks, drawn after it was issued, but before payment of it was demanded, had exhausted the funds of the depositor. If such a result should follow the giving of checks, it is easy to see that bankers would be compelled to abandon altogether the business of keeping deposit accounts for their customers. If, then, the bank did not contract with the holder of the check to pay it, at the time it was given, how can it be said that it owes any duty to the holder until the check is presented and accepted? The right of the depositor, as was said by an eminent judge, (Gardiner, J., in Chapman v. White, 2 Seld. [6 N. Y.] 417,) is a chose in action, and his check does not transfer the debt, or give a lien upon it, to a third person, without the assent of the depositary. This is a well-established principle of law, and is sustained by the English and American decisions. Chapman v. White, 2 Seld. [6 N. Y.] 412; Butterworth v. Peck, 5 Bosw. 341; Bullard v. Randall, 1 Gray, 605; Harker v. Anderson, 21 Wend. 373; Dykers v. Leather Manufacturers' Bank, 11 Paige, 616; National Bank v. Eliot Bank, 5 Am. Law Reg. 711; Pars. Notes & B. (Ed. 1863) pp. 59–61, and notes; Parke, Baron, in argument, in Bellamy v. Majoribanks, 8 Eng. Law & Eq. 522, 523; Wharton v. Walker, 4 Barn. & C. 163; Warwick v. Rogers, 5 Man. & G. 374; Byles, Bills, 'Check on a Banker'; Grant, Banks (London Ed., 1856) 96. The few cases which assert a contrary doctrine it would serve no useful purpose to review." The decision in the case cited is for this court the law of this case. So far, then, as this suit is a suit on the draft against the drawee, to recover the amount of the draft, it cannot be maintained, for, the draft was not accepted by the drawee, nor was it charged by the drawee against the drawer. The draft was a draft or check in the ordinary form, not describing any particular fund, or using any words of transfer of the whole or any part of any amount standing to the credit of the drawer, but containing only the usual request. Under the settled law of New York, where the draft was payable, this was not an assignment of the funds of the drawer in the hands of the drawee. Attorney-General v. Continental Life Ins. Co., 71 N. Y. 325, 330, 331. Before the draft was accepted the drawer could withdraw the deposit or countermand the draft.

In this case, before the draft was presented to the drawee, the drawer assigned to the defendant Coates the entire debt due to it from the drawee, being a sum larger than the amount of the draft, as would appear from the certificate given to the sheriff by the drawee, and including the $1,998 which the plaintiff claims to recover from the drawee in this suit. The validity of this assignment, as a lawful instrument under the laws of Missouri, is not attacked or impeached by any pleading or evidence in this case. The assignment is one of "all of the lands, tenements, goods, chattels, effects and credits" of the Mastin Bank, "wheresoever situate," "in trust for the use and benefit of all the creditors of the said the Mastin Bank, in proportion to their respective claims, as by the law, in case of voluntary assignments, made and provided." The debt from the Metropolitan National Bank to the Mastin Bank was a debt due from a bank located in this

state, and was property in this state belonging to the Mastin Bank. The assignment from the latter bank to Coates, being a voluntary conveyance, valid by the laws of Missouri, as must be assumed, operated to transfer to the assignee the debt due to the assignor from the Metropolitan National Bank, and, as such assignment was prior in time to the attachment of the plaintiff, the latter cannot hold the debt attached, as against the claim of the defendant Coates under the assignment. It does not appear that the assignment to Coates is invalid under any statute or other law of this state. Ockerman v. Cross, 54 N. Y. 29.

There is nothing in the terms of the certificate given by the Metropolitan National Bank to the sheriff which gives to the plaintiff any greater rights than he otherwise would have had. The attachment was against money due as a debt to the Mastin Bank, and the certificate merely set apart so much money to answer the plaintiff's claim, if established. Nor is it material that Coates did not receive payment of the debt from the Metropolitan National Bank before the attachment was levied. There is nothing which shows that the attachment was levied, or that the draft was even presented, before the drawee was notified of the assignment.

The demurrers are allowed, with costs to the defendants, to be taxed, with leave to the plaintiff to move, on notice, on payment of such costs, within 20 days after service of a copy of the order to be entered on this decision, to amend the bill.