THE ÆTNA NATIONAL BANK, Respondent, *v.* THE FOURTH NATIONAL BANK OF THE CITY OF NEW YORK, Appellant.

The relation of banker and depositor is that of debtor and creditor. Deposits on *general* account belong to the bank, and are part of its general fund. The bank becomes a debtor to the depositor to the amount thereof, and the debt can only be discharged by payment to the depositor, or pursuant to his order. Until actual payment, or acceptance by the bank of the depositor's check, or an assignment of the credit by the depositor, and notice to the bank, the deposit is subject to his order.

The contract has none of the elements of a trust. For a breach on the part of the bank, of the obligation resulting from the relations between the parties, the depositor alone can sue.

"The Florence Mills," having a balance of $694.83 to its credit with defendant, sent to it, on the 2d April, by mail, a check on another New York bank for $4,895, accompanied by a letter containing this direction: "which (the check inclosed) please credit our account, and charge us our note of $5,000, due the 4th instant." The check was received and credited in account on the 3d, and, on the same day, defendant paid a past due note of $5,000, of "The Florence Mills," payable at defendant's bank, and charged it in account. On the 4th, the note referred to in the letter, held by plaintiff, was presented, and payment refused.

*Held,* that the direction contained in the letter did not transfer the fund; that plaintiff acquired no title to it, and could not recover.

*Lawrence* v. *Fox* (20 N. Y., 268), and like cases, explained and limited.

(Argued June 5th, 1871; decided September 5th, 1871.)

APPEAL from judgment of the late General Term of the first judicial district, affirming judgment entered upon report of referee in favor of plaintiff.

The plaintiff recovered the amount of a promissory note for $5,000, made by " The Florence Mills," a manufacturing corporation, organized under the laws of, and doing business in, the State of Connecticut, dated December 2, 1867, and payable four months after date at the defendant's bank in New York, which had been discounted and was owned by the plaintiff at its maturity, under the following circumstances: The maker of the note kept an account with the defendant, and, on the morning of the 3d of April, 1868, had on deposit to its credit $694.83, and on the 2d of April sent by mail from Rockville, Connecticut, to the defendant, a check on another New York city bank for $4,895, in a letter containing this request: " which (the check inclosed) please credit our account, and charge us our note of $5,000, due the 4th instant." The letter and check were received by the defendant on the morning of the 3d of April, and its receipt acknowledged by the corresponding clerk. The check was collected on the same day, and credited to " The Florence Mills." On the said 3d of April a note of the Florence Mills for $5,000, also payable at the defendant's bank, due the day before, and which had, on that day, been presented for payment and protested for non-payment, was paid by the defendant, and the amount charged to the Florence Mills. On the next day (the 4th April, the last day of grace being on Sunday, the 5th), the note held by the plaintiff was presented at the defendant's bank for payment, and payment refused for want of funds of the maker.

Judgment for the plaintiff, upon the report of a referee, was affirmed by the court at General Term, and the defendant has appealed to this court.

*Livingston K. Miller,* for appellant. Giving a draft or check, works no appropriation of the funds on deposit. (*Harris* v. *Clark,* 3 N. Y., 93; *Cowperthwaite* v. *Sheffield,* 3 N. Y., 243; *Winter* v. *Drury,* 5 N. Y., 525; *Chapman* v. *White,* 6 N. Y., 412; *Bank of Republic* v. *Williams,* 10 Wall. U. S., 152, and cases cited.) There was no privity of contract. (*Albany Ex. Bank* v. *Sage,* 6 Hill, 562; *Seaman* v. *Whitney,* 24 Wend., 260; *Colvin* v. *Holbrook,* 2 Comst., 126; *Bigelow* v. *Davis,* 16 Barb., 561; *Geer* v. *Martin,* 20 N. Y., 306; *Duffy* v. *Buchanan,* 1 Paige, 453; *Langley* v. *Warner,* 3 Comst., 327.) There was no consideration to support an implied promise. (*Ford* v. *Adams,* 2 Barb., 349; *Blunt* v. *Boyd,* 3 Barb., 209; *Fay* v. *Jones,* 18 Barb., 340; *Hoffman* v. *Schwarbe,* 33 Barb., 194; *Patrick* v. *Metcalfe,* 9 Bosw., 482.)

*W. S. Pitkin,* for respondent. That there was good consideration for the promise, on the part of the defendant, implied in the receipt and acknowledgment of the letter, to use the money as directed. (*Rutgers* v. *Lucet,* 2 Johns. Cas., 92; Story on Bailments, §§ 171 *a* to 162; *Berly* v. *Taylor,* 5 Hill, 577; *Del. and Hud. Canal Co.* v. *West. Co. Bank,* 4 Denio, 97.) Plaintiff can maintain action in his own name. (*Crocker* v. *Higgins,* 7 Conn., 347; 1 Parsons on Contracts, 5th ed., 467; *Phelps* v. *Conant,* 30 Vt., 277; *Brewer* v. *Dyer,* 7 Cush., 337; *Arnold* v. *Lyman,* 17 Mass., 400; *Hall* v. *Marston,* Mass., 575; *Schermerhorn* v. *Vanderheyden,* 1 Johns., 139; *Farley* v. *Cleveland,* 4 Cow., 432, affirmed in Court of Errors, 9 Cow., 639; *Barker* v. *Bucklin,* 2 Denio, 45; *Del. and Hudson Canal Co.* v. *Westchester Co. Bank,* 4 Denio., 97; *Judson* v. *Gray,* 17 How., 289; *Lawrence* v. *Fox,* 20 N. Y., 268;) The promise may be expressed or implied. (1 Boz. & Pul., 276; *Warren* v. *Batchelder,* 14 N. H., 580; *Lewis* v. *Sawyer,* 44 Me., 332; *Drangham* v. *Bunting,* 9 Ired., 10; *Berry* v. *Mayhew,* 1 Dailey, 56; *Berly* v. *Taylor,* 5 Hill, 577; *Del. and Hud. Canal Co.* v. *West. Co. Bank,* 4 Denio, 97.) The engagement may be regarded as made directly to plaintiff. (See opinions of JOHNSON, Ch. J., and DENIO, J., in *Lawrence* v. *Fox,* 10 N. Y., 268; 1 Parsons on Contracts, 5th ed., 467;

*Eagle Bank* v. *Smith,* 5 Conn., 71; *Brewer* v. *Dyer,* 7 Cush.,
337; *Judson* v. *Gray,* 17 How., 289; *Lawrence* v. *Fox,* 20
N. Y., 268.) Particularly so in cases involving *a trust.* (*Neilson* v. *Blight,* 1 Johns. Cas., 205; *Weston* v. *Barker,* 12 Johns.,
276; *Cumberland* v. *Codrington,* 3 Johns. Ch., 251, *Berly*
v. *Taylor,* 5 Hill, 577; *Murdock* v. *Aitkin,* 29 Barb., 59;
*Ross* v. *Curtis,* 30 Barb., 238; *Lawrence* v. *Fox,* 20 N. Y.,
268; see dissenting opinion of Judge COMSTOCK.)

ALLEN, J. The plaintiff does not lay any stress upon the
fact, that the money was loaned by it to the Florence Mills, to
enable the latter corporation to pay the note which is the
subject of this litigation. That transaction has no bearing
upon the claim now made against the defendant. The plaintiff was the owner of the note, and but for the premium on
the exchange, and the gain of a few days' interest, which
resulted from the discount of a new note, and the sale of a
bill on New York, to take up the one about to mature, the
process of renewal would have been very simple; the exchange
of one note for the other, the borrower paying the discount;
and there could have been no misappropriation of the funds.
Or, the plaintiff might have protected itself against all loss,
by remitting, in its own name, the funds for the payment of
the note in New York, and in that case, if the defendant had
appropriated them to any other purpose, it would have been
responsible to the plaintiff. But, by the loan to the Florence
Mills, the money became absolutely the property of that corporation, and was at its disposal the same as money received
from any other source, and belonging to it. It is not denied
that the money was the money of the Florence Mills, and
properly deposited with, and received by, the defendant as such,
and not as the money of the plaintiff. The Florence Mills had,
and kept an ordinary banking account with the defendant,
making deposits with, and drawing checks upon the latter as
occasion required; and there was nothing in the transactions,
or mode of dealing between the parties, to take the account
out of the ordinary rules, applicable to bankers' accounts, or

vary the rights, and obligations resulting from the ordinary course of dealing between bankers, and their customers. The relation of banker, and customer in respect to deposits, is that of debtor, and creditor. When deposits are received, they belong to the bank as a part of its general funds, and the banker becomes the debtor to the depositor, and agrees to discharge the indebtedness, by paying the checks of the depositor, his creditor. The contract between the parties is purely legal, and has no element of a trust in it. (*Chapman* v. *White*, 2 Seld., 412; *Marine Bank* v. *Fulton Bank*, 2 Wallace, 252; *Bank of the Republic* v. *Millard*, 10 Wallace, 152.) The money was not sent to, or received by the defendant as the money of the plaintiff, or a specific fund for the payment of the note held by the plaintiff. It was not sufficient for that purpose, but by a credit of the amount to the general account of the Florence Mills, the defendant became a debtor to the depositor, to an amount in excess of that called for by the note. The direction was to credit the account with this sum; and this direction was complied with, and the relation of debtor, and creditor, between the defendant, and the Florence Mills, to the amount appearing upon the books of the bank to the credit of the depositor, was the result. The whole sum was at the disposal of the depositor, and subject to his checks; and the duty of the defendant, as well as its agreement, was to discharge the indebtedness, by paying the checks of the depositor, and the agreement being with the depositor, the responsibility for a breach of it was to the same party, and, in the language of Mr. Justice DAVIS in *Bank of the Republic* v. *Millard* (*supra*), it would be an anomaly in the law, if another party could also have an action for the same thing; and see *Marzetti* v. *Williams* (1 B. & Ad., 415).

It is not claimed, that there was an express promise to or for the benefit of the plaintiff. There was a promise, and agreement with the Florence Mills, of the character, and to the extent indicated, and the law will not imply a promise as a substitute for, or in addition to the express contract of the parties. (*Whitney* v. *Sullivan*, 7 Mass., 107.)

The defendant then, by an agreement with, and direction of, the Florence Mills, became the general debtor of the latter for something more than $5,000; and whether the agreement was to pay checks generally, or to pay them in a particular order, or to pay a specific check for a part of the indebtedness when presented, cannot be very material, as affecting the relations of the parties, or the legal rights of holders of the checks. All contracts of that character are with the depositor, and under such contract it is well settled, no rights accrue to the holders of checks.

Judge GARDNER, in *Chapman* v. *White* (*supra*), says: "The drawee owes no duty to the holder, until the check is presented and accepted." And again: "Money deposited generally with a banker, becomes the property of the depositary. The right of the depositor is a chose in action. It is immaterial, whether the implied engagement upon the part of the banker, is to pay the sum in gross or in parcels, as it shall be required by the depositor." The cases all agree, that notwithstanding the agreement which bankers make with their customers, to pay their checks to the amount standing to their credit, a check-holder can take no benefit from this agreement, and that a check does not operate as a transfer, or assignment of any part of the debt, or create a lien at law or in equity upon the deposit. (*Harris* v. *Clark*, 3 Comstock, 93; *Winter* v. *Drury*, 1 Seld., 525; *Dykers* v. *Leather Man. Bk.*, 11 Paige, 612; *Chapman* v. *White*, *supra*; *Bank of Republic* v. *Millard*, *supra*; *Thornhill* v. *Hall*, 2 Cl. & Fin., 28.)

The principle was applied by this court, in *Cowperthwaite* v. *Sheffield* (3 Coms., 243), to a bill of exchange, drawn against a consignment of goods, of which the consignees and drawees were advised by letter, accompanying a notice of the shipment of the goods. This court held, that the bills and letter of advice did not operate, as an appropriation of the proceeds of the cotton to the payment of the bills. The judge, delivering the opinion, says: "But if it could, by any equitable intendment, be held to amount, to a specific direction to apply the proceeds of the shipment to the payment of these bills, it

could only be in favor of a party, who had notice of the arrangement and who had purchased the bills, or become liable upon them on the faith of it." The plaintiff here has not acted upon the faith of any dealings, or transactions with the defendant. The money deposited to the credit, and going into the general account of the Florence Mills, was only payable upon a proper voucher, upon check, or in payment of an acceptance, or promissory note of the depositor, payable at the bank. An acceptance, or promissory note thus payable is, if the party is in funds, that is, has the amount to his credit, equivalent to a check; and is in effect an order, or draft on the banker, in favor of the holder, for the amount of the note or acceptance. It was so regarded in this case by the parties, and it was, in substance, a check on the defendant in favor of the plaintiff, with a superadded direction by letter from the drawer, to the drawee, to pay it when presented. This direction was a work of supererogation, and gave no additional sanction, or effect to the previous direction embodied in the note. Checks are but inland bills of exchange, and subject to all the rules applicable to instruments of that character, and impose no obligation upon the drawees until accepted, and until presented and paid, are revocable by the drawer, who has the legal control of the moneys to his credit until actual acceptance or payment of the checks, and this upon the principle, that the contract and obligation of the banker, is to and with the depositor, and not the holders of his checks. (See cases, *supra*). An acceptance must be in writing to charge the drawee, and nothing but an unconditional promise in writing to accept a bill before drawn, will be deemed an actual acceptance, even in favor of one who, upon the faith thereof shall have received the bill for a valuable consideration. (1 R. S., 768, §§ 6, 8.)

Before this note matured or was presented for payment, the defendant paid upon another note of the same maker, payable at the bank of the defendant, and which, by commercial usage, takes the place of, and is equivalent to a check, and charged the same to the account of the maker, leaving an

amount to the credit of the account, insufficient to pay the plaintiff. This payment was valid as against the customer of the defendant, the maker of the note, and that corporation has no cause of action against the defendant, either for the money, or for not paying the plaintiff's note when presented. The defendant has performed its contract with the Florence Mills, and discharged its obligation to it, by honoring its drafts, and was without funds for the payment of the plaintiff's note when presented.

If the defendant is charged with the amount of the note at the suit of the plaintiff; the anomaly will be presented, of a liability existing in favor of a stranger to a contract, after it has been fully performed and its obligations fulfilled, in favor of and by transactions with the party with whom it was made. There was no instant of time between the deposit of the money on the third of April, and the presentation of the note by the plaintiff on the following day, that the directions to pay, given by the letter of the second of April, were not revocable by the Florence Mills, and when the money, had it remained to its credit, would not have been subject to its order, and liable to attachment for its debts; and to hold the defendant liable for any reason to the plaintiff, as the result of the deposit with the directions accompanying it, would be to subject it to distinct, and inconsistent liabilities to different persons for the same debt.

It is sought to bring this case within the principle of those, in which a promise to one, for the benefit of another, has been enforced at the suit of the latter. But in all the cases, in which such an action has been sustained, it is believed there has been a promise upon a distinct, independent consideration, connected directly with the promise; and the promise has not been performed in respect to, or discharged by the promisee, but the debt has been still due and undischarged. In the case before us, there was an express contract between the depositor, and the defendant, such as always exists between banks and their customers, and upon which the defendant owed no duty to the plaintiff, and which could be fully performed, and dis-

charged without affecting any legal rights of the plaintiff; and this action can only be sustained, by implying another and a different contract with the plaintiff, touching the general account of the Florence Mills with the defendant, and the debt owing by the defendant to that corporation.

The defendant here has no money, which equitably and in good conscience belongs to the plaintiff. There is no trust fund, or property of which the defendant is the trustee for the plaintiff, as the *cestui que trust.*

The defendant has received no money from the plaintiff, or from any person as from the plaintiff. A new and undefined liability is sought to be established in behalf of a stranger, by implication, from the simple act of a deposit of one sum of money with a banker, accompanied with a direction to pay a larger sum, and debit the same to the depositor, when a particular voucher should be presented, and after the banker has paid the money upon another order, or draft of the customer; making the banker responsible for a proper adjustment of the rights, and equities of different holders of checks, or drafts on the same fund, which was held improper by the chancellor in *Dyke* v. *Leather Manufacturers' Bank* (*supra*). It was not without a struggle that the doctrine, that upon a promise to A, for the benefit of B, the latter could maintain an action, was established, and judges have yielded assent to it with reluctance; and in general, there has been some trust, or the defendant has been charged, as for money which, *ex equo, et bono*, belonged to the plaintiff, and a privity of contract has been spelled out. (See *Mellen* v. *Whipple*, 1 Gray, 317.) The doctrine will not be extended to new or doubtful cases.

When A, being sued by B, paid the debt and costs to his own country attorney, for transmission to B, and the attorney sent a check, exceeding the amount, to his own town agent, directing him to pay the debt and costs out of it, the agent acknowledged the receipt of the letter, and promised to apply the money as directed, but retained it in reduction of a debt due to him from the attorney. It was held, that A could not maintain an action for money had and received against the

agent. (*Cobb* v. *Becker*, 6, Q. B., 930 ;) *Wedlake* v. *Hurley*, 1 C. and J., 83 ; and *Williams* v. *Everett*, 14 East, 582, were very similar in their circumstances and in principle to this case. In *Wedlake* v. *Hurley*, A, remitted to B, a bank bill indorsed, "pay to the order of B, under provision for my note in favor of C, payable at the office of B, on the first of January, 1830, for £103.5. 6." The bill was remitted in a letter, containing instructions for the application of the proceeds of the bill, simi-lar to the indorsement. B, collected the bill, and received the money ; and upon the application of C, the holder of the note, refused to pay over the money, but kept it, claiming to set it off against a debt due to him from A. C, brought the action, and was nonsuited at the trial before Lord Chief Baron Alexander, and the court in banc sustained the ruling at *nisi prius*, holding that A, might have maintained an action for a misappropriation of the money, but that C had no cause of action. *Williams* v. *Everett* was this : Kelly, residing abroad, remitted bills on England to the defendants, his bankers in London, with directions to pay the amount in certain speci-fied proportions to his creditors, of whom the plaintiff was named as one ; and advised the creditors of the remittance, and directions. The defendants collected the bills, and the action was brought for the proportion assigned to the plain-tiff, by the debtor remitting the same. The claim made by the plaintiff, was very like that upon which this judgment is sought to be supported, viz. : The assent of the defendants to the terms of the remittance, and an implied promise to com-ply with the directions, but it was repudiated by the court. Lord ELLENBOROUGH, C. J., says : "By the act of receiving the bill, the defendant agreed to hold it till paid, and its con-tents, when paid, for the use of the remitter. It is in the power of the remitter, to give and countermand his own direc-tions respecting the bill as often as he pleases ; and the per-sons to whom the bill is remitted, may still hold the bill till received, and its amount when received, for the use of the remitter himself, until by some engagement entered into by themselves, with the person who is the object of the remit-

tance, they have precluded themselves from so doing, and have appropriated the remittance to the use of such person." Those cases cannot be distinguished in principle from this, and they are not in conflict with any of the cases relied upon by the plaintiff. The defendant here has not come under any engagement to the plaintiff, and has not appropriated, or set apart any money, to or for the plaintiff, or done any act precluding it from treating the money remitted by, as well as the money standing to, the credit of the Florence Mills, as the money of that corporation. (See, also, *Baron* v. *Husband,* 4 B. & Ad., 611.) *Lawrence* v. *Fox* (20 N. Y., 268) was upon an express promise, to pay a sum of money received by the defendant, from a debtor of the plaintiff, to the plaintiff; and the promise was the consideration upon which, and upon which alone he received the money. The money was appropriated by the debtor, to the payment of the debt to the plaintiff, and intrusted to the defendant upon an express promise to pay that debt; and yet that case, very different in all the material facts and circumstances from this, was decided by a divided court, and those who acquiesced in the judgment, differing as to the grounds upon which the judgment should rest. Here, the defendant was a debtor of the Florence Mills, upon a general banker's account; there was no special loan on an express promise to pay the plaintiff, and no one else, and there is no principle of agency in the case, which would bring the case within the reasons, which led Judges JOHNSON and DENIO to assent to the judgment in the case last cited. *Kelly* v. *Roberts* (40 N. Y., 432) is, in principle, decisive of this case. It was there held, that an agreement upon no new consideration, between debtor and creditor, that the former should pay the amount of his debt to a third person, is not irrevocable by the creditor, and does not create a trust or interest in such third person, as will prevent its being held under attachment against the property of the debtor. The case is well distinguished by Judge JAMES, in delivering the opinion of the court, from *Lawrence* v. *Fox,* and kindred cases; and in the course of his opinion he says: " The simple inquiry,

whether, if a creditor directs his debtor to pay his note to a third person, and he assents, such creditor can revoke the direction, has never been decided in the negative, and I think it cannot be so decided on any principle." The reasoning of Judge JAMES was concurred in by Judges GROVER, WOODRUFF and MASON. Judge LOTT was also for an affirmance of the judgment, on the ground that the verbal agreement of the defendant, to pay the plaintiff, was made at the same time of the bill of sale of the goods, which was the alleged consideration of the promise, and was therefore merged in it, and void.

There is no principle, or well-considered authority, upon which the judgment can be sustained. I am for a reversal of the judgment, and a new trial.

All concur except CHURCH, Ch. J. dissents.

Judgment accordingly.