## Case No. 3,243.

In re CORN EXCHANGE BANK.

[15 N. B. R. 216.][1]

District Court, E. D. Wisconsin. Jan., 1877.[2]

BANKRUPTCY—PROOF OF DEBT BY STATE.

1. A state may prove a claim for a balance of moneys appropriated for the support of a

[1] [Reprinted by permission.]
[2] [Reversed in Case No. 3,242.]

state prison, which have been deposited by the warden of the prison with the bankrupt, a bank, in the name of such warden as such officer, where the directors of the prison had previously arranged with the bank for such deposits and agreed upon the form in which the account was to be kept, although there was no law requiring the warden to deposit such moneys, and the state held his bond to account for all moneys coming into his hands.

[Cited in Re Smith, Case No. 12,990.]

2. But the proof should be made by some officer holding a relation to the state similar to that which a president, cashier, or treasurer bears to a corporation of which he is such officer.

On the first day of October, 1875, the state of Wisconsin made and filed proof of a claim, to the amount of nine thousand six hundred and eighty-one dollars and twenty cents, against the estate of the bankrupt. This proof was made by H. N. Smith, the warden of the state prison, for and in behalf of the state. Upon application of the assignee the register expunged the claim. The case was then certified to the court by the register for review, at the instance of the attorney general.

A. Scott Sloan, Atty. Gen., for the State.
Levi Hubbell, for assignee.

DYER, District Judge. The bankrupt was a banking corporation, doing a banking business at Waupun, in this state. H. N. Smith was warden of the Wisconsin state prison, and as such, all moneys appropriated by the state for the support of the prison and drawn from the state treasury by order of the prison directors, together with the income derived from convict labor, came into his hands and were disbursed by him. Pursuant to the requirements of statute, the warden executed to the state a bond with sureties, obligating him to account for all moneys coming into his hands as such warden. Moneys appropriated for prison purposes were from time to time drawn from the state treasury on orders of the directors of the prison. From the testimony it appears that in April, 1874, when the warden assumed the duties of his office, it was arranged between the directors and the warden that all public moneys coming into his hands should be deposited in the Corn Exchange Bank, and an understanding was had between the directors of the prison, or some of them, and the cashier of the bank that such moneys should be so deposited, and that the account should be kept in the name of "H. N. Smith, Warden," and that checks for such moneys should be drawn over such official signature. Thereafter, prison funds were so deposited, and checks therefor were so drawn. At the same time, Smith had an individual account with the bank. On the 4th of August, 1875, the warden deposited about ten thousand dollars, moneys received from the state treasurer. On the 6th day of the same month the cashier absconded, and on the 10th the bank closed its doors. At

that time there was a balance of nine thousand six hundred and eighty-one dollars and twenty cents standing to the credit of "H. N. Smith, Warden," upon the books of the bank. On the 2d day of September, 1875, a petition in bankruptcy was filed against the bank, and it was subsequently adjudicated a bankrupt. The testimony shows that no interest was ever paid or agreed to be paid by the bank to Smith for the use of money so deposited. Upon this state of facts, the state asserts its right to prove a claim against the estate of the bankrupt, for the balance of nine thousand six hundred and eighty-one dollars and twenty cents undrawn at the time of the failure of the bank, which asserted right is disputed by the assignee. If this claim is a debt due to the state, it has priority over general creditors under the third subdivision of section 28 of the bankrupt law [of 1867 (14 Stat. 531)]. In determining the question involved in this controversy, it is important first to refer to legislative provisions touching some of the duties of the warden and the appropriation of moneys for prison purposes.

By an act of the legislature of 1873, the warden is made treasurer of the prison, and is required to render to the directors on the first day of each month a full and accurate statement of all moneys received by him, and all sums of money expended by him during the preceding month. The same act provides that the warden shall give bond to the state, conditioned that he will faithfully account for all moneys placed in his hands as prison treasurer, and perform all duties incumbent upon him as warden of the prison. By legislative act of 1874, twenty-five thousand dollars were appropriated for the payment of current expenses at the prison for that year, and it was provided that all moneys so appropriated should be drawn from the treasury on the order of the directors of the state prison, and in no other manner. In 1875 the legislature appropriated thirty thousand dollars to defray the expenses of the prison for that year, the moneys so appropriated to be paid, as the necessities of the prison should require, to the warden on the order of the directors. No law of the state required the warden to deposit moneys coming into his hands in any bank or other place of deposit, nor was there any statutory regulation or direction as to the manner in which such moneys should be held or kept by him.

Upon the facts before stated, in connection with the legislation referred to, the question is, whether the balance due from the bank on the account of H. N. Smith, warden, is a debt due to the state. Does it constitute a claim legal or equitable in favor of the state, to be recognized in the bankruptcy proceeding? Counsel for the assignee take the position that, as no statute required the warden to deposit in the bank moneys received by him officially, the deposit which he made was his personal, voluntary act; that, by making the deposit, the money was converted into a credit, he becoming a creditor and the bank a debtor as to the money deposited; that this credit was personal to Smith, and that the state had no legal claim against the bank thereon. Further, it is claimed that the warden did not act as the trustee or agent of the state in making the deposit; that the act of making the deposit was not a breach of any trust; that upon no principle of subrogation can the state acquire a right to the credit in question, and so that it has no demand against the estate of the bankrupt which can be enforced in equity. Undoubtedly the deposit by the warden created a simple credit and made the bank a debtor for the amount deposited. It is now well settled that the relation of banker and customer is that of debtor and creditor. The money when deposited becomes the property of the bank, the latter becomes the debtor of the depositor, and the contract is purely legal, without any element of trust in it. Marine Bank v. Fulton Bank, 2 Wall. [69 U. S.] 252; Thompson v. Riggs, 5 Wall. [72 U. S.] 663; Bank of the Republic v. Millard, 10 Wall. [77 U. S.] 155; Oddie v. Bank of New York, 45 N. Y. 739; Aetna National Bank v. Fourth National Bank, 46 N. Y. 86.

It is an important fact in the case that an arrangement was made by the directors of the prison with the cashier of the bank for depositing funds in the hands of the warden, and as to the manner in which the account should be kept. Keeping in view that fact, the question seems to be, who was the real party in interest in the transaction between the bank and the warden? The moneys deposited came to the warden from the treasury of the state. They were designed for certain public uses, and were to be expended by an agent of the state designated by law to perform that duty. Before deposited, and while in the hands of the warden, it seems clear that the ownership of the moneys was in the state. Suppose that, by robbery, that officer had lost the possession of the moneys; could they not properly have been described, in an indictment against the robber, as the property of the state? I do not regard the question as open to discussion that before the deposit was made these funds belonged to the state.

The inquiry then follows, who was, in fact, the owner of the credit established by the deposit? True, the hand of the warden placed these moneys in the bank. But he was the agent of the state. The moneys were not his. He was dealing with them in a representative capacity. His act, in connection with the act of the cashier in receiving the deposit, created the credit in question. But he had no personal ownership of or interest in that credit. True again, that, at his will, money could be drawn from the bank against that credit. But every lawful act done by him in relation to the

moneys or the credit would necessarily be done for the state and as its agent. The error in the position taken by counsel for the assignee lies, I conceive, in the assumption that, because the act of making the deposit was the physical act of the warden, therefore the credit thereby created was his personal credit. It is argued that the state did not deposit the moneys, and that it was the act of Smith; as if the state could do any act except by its officers or agents. To illustrate, the reasoning leads to this: that if the state treasurer should deposit moneys belonging to the state in a bank, the officers of which had knowledge of such ownership, and the moneys should pass to his credit as treasurer in an account kept with him as such officer, since his will had directed and his hand had made the deposit, therefore the credit thereby created was personal to him alone, not only legally but equitably, notwithstanding the fact that throughout the transaction he was the representative of the state.

Suppose the warden had died with this bank credit existing. Would it have passed to his heirs? Suppose he had become bankrupt, would his individual creditors have been entitled to it? Could the bank have been garnished upon this credit by a creditor of Smith suing him upon an individual debt? Upon the facts as they here exist, I think not. To support the claim of the state in this proceeding, it is not necessary that the transaction should be such that an action at law would lie against the bank in behalf of the state. If equitably the state is entitled to the credit, then the claim should be allowed, for the bankrupt law recognizes equitable as well as strictly legal demands. It is true, as stated, that no law required the warden to deposit moneys received by him for expenditure for prison purposes, and much stress is laid upon this fact in combating the claim of the state. But it nevertheless is the fact that, before any deposits were made, the directors of the prison, representing the interests of the state, arranged with the bank for such deposits, and agreed upon the form in which the account should be kept, and it must be assumed, upon these facts, that the officers of the bank had notice of the ownership of the moneys so deposited. The money deposited was, as we have seen, the money of the state. The bank had knowledge of the fact. The deposit account was kept in form so as to distinguish it from the warden's individual account. The transaction with the bank was the result of the concurrent action of the directors and the warden. Upon such a state of facts, I think the state may, if it will, claim the amount of the credit in question as a debt due to it, although there was no statute requiring the warden to make the deposits, or designating this bank as a depositary of moneys appropriated for prison purposes. It was strongly urged upon the argument, that as the state

holds the bond of the warden it must look alone to that security. But I regard that as an obligation giving merely an additional remedy to the state, and it cannot be conceded that, because, the state may look to his bond for indemnity, therefore this credit in the bank must be treated as the personal credit of Smith.

The case of Swartwout v. Mechanics' Bank, 5 Denio, 555, was relied on in the argument by counsel for the assignee and should be noticed. Swartwout was collector of customs for the port of New York, and kept an account with the bank, in the name of "Samuel Swartwout, Collector." For a balance due upon that account he brought suit. The bank, assuming that the credit, the amount of which was so sought to be recovered, belonged to the United States, undertook to set off against the plaintiff's demand a balance due from the government to the bank. This was attempted, it must be borne in mind, in an action at law by Swartwout against the bank, and in a case where the only fact shown, touching the ownership of the money, was that of its deposit in the name of the depositor with his official addition. The court held the plaintiff entitled to recover. There was no affirmative proof that the money deposited belonged to the United States. The court was left to inference upon that point. No instructions of the secretary of the treasury as to depositing the money were given in evidence. There was nothing in the case to show that depositing the money in the bank in the manner in which it was done was by the direction or order of any officer of the government. And in the absence of any proof in the particulars mentioned it was assumed by the court that the deposit was liable to be drawn only by Swartwout. It is plain, from the opinion of the court, that, upon the facts as they appeared in the case, and in the absence of other material facts, the court regarded the bank as estopped, in an action at law between it and Swartwout, to assert that the moneys deposited belonged to the United States. That case is to be distinguished from this at bar in other respects. The moneys deposited by Swartwout were not, previous to their coming into his hands, the moneys of the government. It was necessary that they should pass into the control of the government before ownership could be asserted, and, as shown, the case was destitute of affirmative proof that the deposit was made by direction or under any arrangement with any other officer of the United States, or that it was a payment over of the money, in discharge of official duty. If Swartwout had received the deposited moneys from the secretary of the treasury, and if they had been deposited, and the form of the deposit account had been adopted, by arrangement between him or some other competent authority of the government and Swartwout and the bank, so that the

bank had thus acquired knowledge of the ownership of the moneys when deposited, I cannot doubt that the government, in a proceeding between it and the bank, could have asserted a claim to the credit created by the deposit, and that the bank could have set off against such claim a balance due to it from the government. The case of Miller v. Receiver of Franklin Bank, 1 Paige, 444, was also cited on the argument; but, upon the facts, I do not regard it as applicable to the case under consideration.

As a conclusion from the views expressed, it results that the claim of the state may be proved against the estate of the bankrupt. There is some question whether the proof of claim presented is regular in form and execution. It is made and verified in behalf of the state, by H. N. Smith, warden of the prison. I think it should be made by the state treasurer, or by some officer holding a relation to the state similar to the relation which a president, cashier, or treasurer bears to a corporation of which he is such officer. The attorney general will have leave to amend or correct the proof of claim in question accordingly.

[NOTE. The assignee appealed to the circuit court, which reversed the decision herein. See Case No. 3,242.]