EDWIN ARTHUR GRAY, by WILLIAM MONROE, his GUARDIAN, RESPONDENT, v. THE BOARD OF SUPERVISORS OF TOMPKINS COUNTY, APPELLANT.

*County — liability of, for wrongful conversion of trust funds by its county treasurer.*

One Bristol while county treasurer of Tompkins county received certain funds with directions to invest them for the benefit of the plaintiff, an infant. He invested the funds and received interest thereon for several years, but finally without authority disposed of the securities and deposited the amount received therefor to his credit in the bank or banks where he kept his accounts, and in which all the moneys he received were commingled, as well those received for the benefit of the county as those received for immediate investment or to await the further order of the court. He misappropriated the funds, using them for his own benefit and applying funds deposited for one purpose to pay charges against other funds. Upon the expiration of his term of office he paid over to his successor a balance of county moneys in his hands and untruly reported that the plaintiff's money was invested in bonds and mortgages.

*Held,* that the plaintiff could not maintain an action against the county to recover the money belonging to him which had been wrongfully appropriated by the county treasurer.

* *Backer* v. *Board of Supervisors of Schuyler County,* distinguished.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The plaintiff, an infant, was the owner of certain real estate situate in the county of Tompkins, which was sold according to statute, by proceedings in the Supreme Court, and the price paid therefor

* SUPREME COURT—GENERAL TERM, THIRD DEPARTMENT, SEPTEMBER, 1876.

*Present*— LEARNED, P. J., BOARDMAN *and* BOCKES, JJ.

EVA BACKER, BY HER GUARDIAN, RESPONDENT, v. BOARD OF SUPERVISORS OF SCHUYLER COUNTY, APPELLANT.

APPEAL from a judgment, rendered upon the report of a referee in favor of plaintiff.

*E. P. Hart,* for the appellant.

*A. Hadden,* for the respondent.

BOARDMAN, J. :

The findings of fact by the learned referee are very full, and with a single exception are not criticised by the appellant, I therefore adopt such findings as a concise statement of the facts. The action is for money had and received by the

deposited with the county treasurer of said county, to be by him invested for the use and benefit of said infant, under and by virtue of an order of the court which directed the sale.

George H. Bristol, then county treasurer of Tompkins county, pursuant to said order, on the 30th day of April, 1870, invested $400 of said money in a mortgage upon lands of one Thatcher, and in the month of June following he invested the remaining $350 in a mortgage upon lands of one Hayes.

On the 20th day of July, 1875, the said county treasurer, without authority from the court, sold the aforesaid Thatcher mortgage for $400, and deposited the money received to his credit as treasurer in the First National Bank of Ithaca. On the 31st day of July, 1875, the aforesaid Hayes mortgage, amounting at that time, including interest, to $354.38 was paid to said treasurer, and the money deposited in the Tompkins County National Bank to his credit.

On the 22d day of July, 1875, when the $400 received on the sale of the Thatcher mortgage was paid and deposited as above stated, Bristol held to his credit as treasurer in the different banks the aggregate sum of $237.55. But at this time Bristol was a defaulter as treasurer to the amount of $5,000 and upwards, on account of funds of the county, and money from time to time deposited with him under orders of the courts, misappropriated by him, or converted to his own use.

---

defendant. The judgment for the plaintiff may be predicated upon any one of the following positions:

1st. That the neglect to keep these trust funds separate and apart from the county funds, and the depositing and intermixing the same with the general funds of the county, constituted a conversion thereof to the use of the county whereby the county became liable as for money had and received.

2d. That the drawing out from the general funds, after this deposit was made, large amounts far exceeding the amount of plaintiff's claim on account and for the benefit of the county of Schuyler would, in like manner, create a liability on the part of the defendant, although at the same time the treasurer illegally drew an amount exceeding plaintiff's claim from the same fund during the same time and became a defaulter therefor.

3d. That the defendant by their subsequent accounting with the defaulting treasurer and receiving from him such notes and securities as could be obtained, and turning them over to the newly appointed treasurer as property and assets of the county of Schuyler, are estopped from setting up the defalcation against the plaintiff while they take the proceeds thereof.

It further appeared by an examination of the accounts sworn to by Bristol, and reported by the referee, that after January 1st, and prior to July 1, 1875, he had drawn from the two banks in Ithaca, and used in his own private affairs, misappropriated and converted to his own use, the sum of $1,335 and upwards of the funds in his hands as county treasurer.

On the 31st day of December, 1875, Bristol's term of office as treasurer expired, and he was succeeded by K. S. Van Voorhees. At the close of Bristol's term he paid over to his successor the sum of $1,775.39, and reported $792 (that being what the plaintiff's fund then amounted to), as invested for the plaintiff in mortgages. But the referee finds that the report as to the investment of the plaintiff's money was untrue; that Bristol tendered to his successor mortgages upon his own property as security for the plaintiff's claim, which were rejected as inadequate.

The plaintiff brings this action against the board of supervisors of Tompkins county, to recover the amount of his funds deposited with the treasurer as aforesaid, claiming that Bristol used the same to pay county indebtedness, and that the county is liable therefor as money had and received to the plaintiff's use.

*P. G. Elsworth* and *Merritt King*, for the appellant.

*S. D. Halliday*, for the respondent.

The facts upon which the first two propositions are founded are unquestioned. As to the third it is claimed the referee is in error.

Plaintiff's money was deposited to the credit of the treasurer on the 8th of February, 1872. On that date the treasurer's account was slightly overdrawn. Between that day and the twenty-second of June large deposits were made and checks drawn against such deposits. On the latter day the account was balanced. Up to May thirtieth $12,314.57 had been deposited and $9,125.60 checked out; $2,370.66 of the latter amount was wrongfully checked out and loaned to various individuals. The residue of the $9,122.60, except about $700, was drawn out and paid for the proper debts and liabilities of the county. The $700 was a trust fund properly paid out by the treasurer to its owner. It is clear, therefore, that plaintiff's money was wrongfully applied to the use of the county or for temporary loans in violation of law. Plaintiff's moneys having been commingled with the county funds in one general account cannot be traced specifically. The referee finds that the notes taken for the temporary loans above referred to were afterwards in part paid and the proceeds placed to the credit of the treasurer again, and the balance of such notes or obligations were taken possession of by

OSBORN, J. :

On the argument we were all agreed that the judgment appealed from in this action should be reversed, unless the decision of a case somewhat similar in character, entitled *Eva Backer, by Guardian,* v. *The Supervisors of Schuyler County* (decided by this General Term in 1876, and reported in 3 Weekly Dig., 293) was binding upon us. But we are satisfied, from a most careful examination, that the Schuyler county case is easily distinguishable from the one under consideration, as will be attempted to be shown. We are not inclined to extend the doctrine held by Mr. Justice BOARDMAN, for it is evident from the language employed in his opinion, which was in favor of an affirmance, and where every legal presumption or intendment should be indulged in in order to affirm, that he had some difficulty in arriving at the conclusion he did with the facts before him. In the case at bar certain funds of the plaintiff were, by order of the court, placed in the hands of one Bristol, county treasurer of Tompkins county, with directions to invest for the benefit of the infant. He made such investments and for several years received interest thereon. Finally, without any authority, he disposed of these securities, and deposited the amount received to his credit in the bank or banks where he kept his accounts. All the moneys he received were commingled in one common fund, as

the defendants and from them went into the hands of the new treasurer as the property and assets of the county. One thousand dollars or more of such securities proved to be worthless. These findings are sustained by the evidence of the late treasurer, except that he does not say that the same notes or obligations originally taken went into the possession of the county. On the contrary, he refers to a list of such securities on pages 41 and 42 of the case as being the proceeds of such temporary loans not paid and the securities he held therefor. Those securities amounted to $2,357.09, and $856.10, besides in cash were also realized from the notes and taken upon these temporary loans. In addition the defendant received of the late treasurer $10,772.84 in mortgages at their face value, making in all so received $13,986.03. It also appears by the report of a committee of the defendant that the amount of defalcation in the trust funds, including that due plaintiff, was $33,386.10, which is nearly covered by the notes and cash received by defendant as above stated, viz., $3,213.19. It does not appear that the identical notes, etc., taken for loans in the spring of 1872 went into the defendant's possession, but notes and securities of a greater amount were surrendered to and received by the defendant and went into the hands of the new treasurer. I think therefore the finding is, in substance and effect, supported by the evidence.

well the moneys coming into his hands for the benefit of the county and the payment of its indebtedness, as funds which were directed to be placed in his hands, either for immediate investment or to await future orders of the court. In these court or trust funds the county had no interest whatever and received no benefit therefrom. This treasurer, Bristol, who held the office for six years, was, as the evidence shows, a notoriously bad man, though doubtless enjoying public confidence and esteem. It can easily be seen that, during his entire term of office of six years, he was constantly misappropriating funds, using trust and county funds for his own personal benefit; funds of infants deposited with him by order of the court were taken to pay county expenses, and the funds of the county to pay funds which he was obliged to account for, which had been so deposited with him by order of the court; and of course at all times subject to its order : the result of this robbery from one fund to make good another at the last was, as can easily be surmised, that he turned out a defaulter and utterly unworthy the position he occupied or of the confidence which had been reposed in him.

This action is brought to recover against the county on the ground that the county treasurer has used the plaintiff's funds for the benefit of the county, and that, but for these funds, he would have

Upon such an understanding of the case we might, perhaps, doubt whether this judgment could be sustained on any one of the positions hereinbefore stated. But I think upon all combined a case is made in which the defendants are shown to have had and received to their own use the moneys of the plaintiff. It follows that plaintiff is entitled to recover if there be no rule of law making the defendants an exception to the general rule. The case of *Newman* v. *Supervisors of Livingston* (45 N. Y., 676) holds that a board of supervisors may be sued in such cases in the same manner with an individual. (See, also, *Hill* v. *Supervisors of Livingston*, 12 N. Y., 52.)

In the view I have taken of this case it does not seem necessary to pass upon or determine the nature of the relations existing between the county treasurer of a county and its board of supervisors. If I am correct in my reasoning the plaintiff would be entitled to recover in any event. Nor can any importance be attached to the neglect of the defendant to prosecute the official bond of the defaulting treasurer, whether it should have been done upon defendant's own motion when a defalcation became known or whether the plaintiff should have made the demand or request on her own behalf to create the duty. As no question has been raised in respect to the right of the plaintiff to maintain this action and recover the money, that subject need not be considered.

For the reasons given the judgment should be affirmed, with costs.

been a greater defaulter to the county. I confess I do not see how the action can be maintained. The money of the plaintiff had lost its identity. The investment made of such funds he had, without authority, gathered in, and commingled the avails with funds derived from every other source. Why not the county as well say to the plaintiff (assuming that the plaintiff had received his pay from the treasurer): "You must pay this back because the treasurer paid you from funds raised for county purposes?" As the respondent well says in his points "that any particular money left with the treasurer and deposited, as it was by him in the common fund, loses its identity, and the treasurer becomes the debtor of the depositor." And if the treasurer should pay a claim from the fund so commingled by him, could every person or municipality interested in the fund maintain an action against the one so fortunate as to receive his pay, on the ground that a part of his or its money must have gone in to make the fund for such payment? Most clearly not. (*Perley* v. *County of Muskegon*, 32 Mich., 132; S. C., 20 Am. R., 637; see opinion of CAMPBELL, J., at p. 639.)

As has already been intimated, we have felt some embarrassment from the Schuyler county case above referred to. It probably controlled the referee. The learned judge who wrote the opinion in the Schuyler county case, I think, arrived at his result with some reluctance. But we should feel bound by that decision if there was no substantial difference in the two cases.

But it seems to me there is a clear and well defined difference in the Schuyler county case, the board of supervisors, knowing that the county treasurer was a defaulter, settled with him, and actually and knowingly received the infant's funds or securities in payment of the deficit due from such treasurer to the county.

In the case at bar it is true an action was commenced against Bristol and his sureties, but the county received nothing on account of any interest or fund which this plaintiff had with this defaulting county treasurer.

The distinction in the two cases is marked and obvious. Suppose in the case under consideration the county treasurer had been a banker receiving money on deposit from any and all parties desiring to open a bank account with him. These funds he commingled with his own individual funds; funds of the county and funds

deposited with him by order of the court.   An individual depositor is fortunate enough to draw out the amount he has on deposit before the defalcation is apparent.   Could the county or the owner of court funds so deposited, or other depositors, recover against the fortunate depositor because it might appear that it was from their funds in whole or in part that the fortunate depositor was able to obtain such payment?   By every process of reasoning it seems to us the learned referee erred in not distinguishing this from the Schuyler county case.

The judgment should be reversed; the order of reference discharged or vacated, and a new trial granted, with costs to abide the event.

RUMSEY, J.:

I concur in the result in this case.   I base my concurrence on the following propositions which I regard as established:

1st. That the treasurer had the title to the mortgages in which the plaintiff's money was invested (Laws 1848, chap. 277, § 4), and that the money received by sale and collection of those mortgages belonged to the treasurer, although impressed with a trust in favor of plaintiff while it could be traced.

2d. That when the treasurer deposited the money in the bank to his credit, the bank became his debtor to that amount and the money deposited became the money of the bank, although still liable as between the treasurer and the plaintiff, to be applied to satisfy plaintiff's claim.   (*Ætna Nat. Bank* v. *Fourth Nat. Bank*, 46 N. Y., 82; 1 Perry on Trusts, § 463.)

3d. That the receipt by the treasurer of money of the county from time to time made him a debtor to the county.   (*Perley* v. *County of Muskegon*, 20 Am. R., 637, 639, and cases cited.)   And it appears that at the time he received the plaintiff's money, he was a debtor to the county in the sum of over $5,000.

4th. That the payment by the treasurer of the money so deposited by him in the bank, upon the liabilities of the county, was a payment *pro tanto* of his debt to the county in due course of business.

5th. That the county having received the payment in good faith, and without notice of the claim of plaintiff, is not liable to the

plaintiff therefor. (*Stephens* v. *Board of Education*, 79 N. Y., 183; *Southwick* v. *First Nat. Bank*, 84 N. Y., 420, 435.)

I think that within the principle of the two last cases cited the case of *Backer* v. *Supervisors of Schuyler County* (3 Weekly Dig., 293) cannot stand, and it should be overruled.

Present — LEARNED, P. J., RUMSEY and OSBORN, JJ.

Judgment reversed, new trial granted. Referee discharged, costs to abide event.