GEORGE S. EWART, Plaintiff, *v.* THE BANK OF MONROE, Defendant.

*Sale of goods by a commission agent — death of the agent, insolvent — right of the principal to recover from a bank the proceeds of goods sold, deposited therein by the agent — unpaid note of the agent, held by the bank.*

If a commission merchant deposits to his credit in his own open general bank account his principal's share of the proceeds of goods sold, which the principal is entitled to have immediately remitted by the agent, and dies leaving the deposit so credited, the principal may recover the same from the bank in which it is deposited, in an action at law, and the bank cannot resist payment thereof

on the ground that it has a lien on the deposit from the mere fact that it holds an unpaid note of the depositor which it has discounted for him, but which was not due at the date of the deposit, or on the ground that the depositor's estate is insolvent; nor is it a defense to such action that the plaintiff had not obtained or presented a check for his money, drawn by the depositor or his representatives.

MOTION by the defendant, the Bank of Monroe, for a new trial upon exceptions ordered to be heard at the General Term in the first instance, upon the direction of a verdict for the plaintiff at the Livingston Circuit on the 8th day of February, 1893.

The action was brought by the plaintiff, George S. Ewart, to recover from the defendant, the Bank of Monroe, the sum of $364.89, with interest thereon from August 31, 1892.

*L. O. Reed,* for the plaintiff.

*Elbridge L. Adams,* for the defendant.

LEWIS, J.:

On the 29th day of July, 1892, the plaintiff shipped to Elmer E. Frye, a commission merchant, doing business in the city of Rochester, a carload of oats, which Frye had theretofore contracted to sell for the plaintiff on commission. The oats arrived in Rochester on the first of August. Frye was at the time confined to his house by sickness. His agent received the oats, turned them over to the purchaser and received in payment therefor, in currency, $395.20, which he immediately deposited with the defendant bank, and the bank credited Frye's account with the amount of the deposit. The deposit was made in the ordinary manner, without any notice being given to the bank officials as to who owned the money.

The plaintiff was entitled to $364.89 of the proceeds of the sale, the balance being the commissions, freight, etc., to which Frye was entitled.

Frye died on the fourth day of August following, without paying the plaintiff for the oats. His estate was found to be insolvent.

The plaintiff had made prior consignments of grain to Frye, and the custom had been for Frye to sell the property, receive the proceeds of the sale, deposit them with the defendant bank and immediately obtain from it a New York draft for the amount coming to the plaintiff and remit the same to him.

Frye kept an account with the defendant, and he had a credit

balance with the defendant at the close of the business of July twenty-fifth, of $2,571.92; July twenty-sixth, $9,611.92; July twenty-seventh, $2,029.22; July twenty-eighth, $3,743.41; July twenty-ninth, $2,053.67; July thirtieth, $1,933.67; August first, $3,029.86, and August second, $2,199.92. His last deposit was on the second of August, of $547.50. On the second of August the defendant paid Frye's acceptances and his check for sums aggregating $1,377.44, which left, as we have seen, to his credit in the bank at the close of business on that day $2,199.92. The defendant discounted for Frye on the first of August his promissory note of $4,000, and credited his account on that day with the proceeds of the discount. The note was given to renew a note of Frye's then held by the bank maturing that day. The note discounted on the first of August fell due on the fifth of September following, and has not been paid, or any part of it. The defendant bank held at the time of discounting the $4,000 note collaterals of the value of $3,100. The plaintiff notified the defendant on the 9th day of August, 1892, that he claimed to be the owner of $364.89 of the deposit made by Frye on the first of August, and forbid the payment of said sum or any part of it to the administrators of Frye, and on the thirty-first of August following, made a written demand for the payment of the money of the defendant. Payment was refused, and thereupon this action was commenced.

At the close of the evidence each party asked for the direction of a verdict in their favor respectively; a verdict was directed for the plaintiff for the sum of $364.89.

Plaintiff contends that the net proceeds of the oats belonged to him, and that notwithstanding they were deposited with the defendant by Frye they are still his property and that the defendant is liable to him therefor in an action at law.

The defendant contends that, being the owner of Frye's note for $4,000 at the time the deposit was made, it had a lien thereon by virtue of being the owner of the note, and it further contends that it was under no legal obligations to pay the money to the plaintiff without the presentation of Frye's check or of that of his representatives; that in no event can the plaintiff recover in an action at law; that if the plaintiff has any remedy it is an action in equity to which Frye's representatives are a party.

It was Frye's duty on receipt of the money for the oats to remit to plaintiff his part of the proceeds of the consignment. This he probably would have done had it not been for his sickness. It was the plaintiff's money. It was deposited with the defendant without plaintiff's consent; Frye's agent could not deprive the plaintiff of his right to the money by delivering it to the defendant.

Judge ANDREWS, speaking for the Court of Appeals in *Baker* v. *New York Nat. Ex. Bank* (100 N. Y. 33), says that, "The relation between a commission agent for the sale of goods and his principal is fiduciary. The title to the goods until sold remain in the principal, and when sold the proceeds, whether in the form of money or notes or other securities, belong to him, subject to the lien of the commission agent for advances and other charges. The agent holds the goods and the proceeds upon an implied trust to dispose of the goods according to the directions of the principal, and to account for and pay over to him the proceeds from sales. The relation between the parties in respect to the proceeds of sale is not that of debtor and creditor simply. The money and securities are specifically the property of the principal and he may follow and reclaim them so long as their identity is not lost, subject to the rights of a *bona fide* purchaser for value."

*Merrill* v. *The Bank of Norfolk* (19 Pick. 32), is to the same effect.

*Clark* v. *Merchants' Bank* (2 Comst. 380), is not in conflict with this doctrine. The facts in the latter case negative the claim of the plaintiff there that the proceeds of the bill were to be remitted to them when received by their correspondents in New York. They were deposited with the defendant bank in that case by consent of the plaintiff.

The plaintiff's right to the money here could not be affected by the deposit, unless the defendant, when it received the money and credited Frye's account with it, acquired some right to it superior to that of the plaintiff. There was no understanding or agreement between Frye and the defendant that it should have a lien upon Frye's credit balance in the bank as collateral to any notes of Frye's which the bank might hold. Frye kept an active account with the bank, depositing and checking daily.

It is true the record shows that it was conceded upon the trial

that if the cashier were present in court he would testify that the note was discounted by the defendant relying upon Frye's apparent ownership of his credit balance in defendant's bank. But it is apparent from the character of Frye's account with the bank, depositing as he did daily and checking at his convenience upon any credit balance he may have had in the bank, that the bank did not in fact rely upon the moneys on deposit as security for Frye's paper, but did rely upon the collaterals in its possession at the time and upon Frye's personal responsibility. Frye was at liberty to check out all the money he had in the bank if he so desired, and the defendant could not legally refuse to pay his check because it happened to hold his paper not then due.

Frye's probable object in obtaining the discount of the $4,000 note was that he might use the proceeds in his business until the note matured. That purpose would have been thwarted if the bank were at once upon discounting the note, to have a lien upon the money as security for the payment of the note.

Each party having asked for a direction of a verdict, the question of fact as to whether the bank relied upon the deposits as its security for the note was for the decision of the court, and the court found against the defendant on that question.

It being the plaintiff's money, his right to reclaim it did not depend upon the presentation of Frye's check or that of his representatives.

We do not see how the possession and presentation of Frye's check would have strengthened the plaintiff's case. It would not have worked an assignment of the money nor given the plaintiff a cause of action against the defendant. (*Ætna National Bank* v. *Fourth National Bank*, 46 N. Y. 82.)

Then no such defense is pleaded. The defense interposed is that the defendant has a lien upon the money by virtue of being the holder of the $4,000 note mentioned. The defendant claimed and still claims to have a lien upon the money against the plaintiff as well as against the representatives of Frye.

There is nothing in the record tending to show that Frye's representatives have any claim or interest in the money, and the defendant has neither by demurrer or otherwise, raised the question of the nonjoinder of Frye's representatives.

The insolvency of Frye's estate gave the defendant no lien upon the money. (*Fera* v. *Wickham*, 31 N. E. Rep. 1028.)

The plaintiff made out his cause of action, and was entitled to the verdict directed by the court.

The motion for a new trial should be denied, with costs, and judgment directed for the plaintiff, on the verdict.

DWIGHT, P. J., MACOMBER and HAIGHT, JJ., concurred.

Defendant's motion for a new trial denied, with costs, and judgment ordered for plaintiff, upon the verdict.